[No. 15770.   Department Two.—November 30, 1894.]

Estate of ANNA L. MURPHY, Deceased. ANNA
T. WOLSELEY et al., Respondents, v. MARY H.
MURPHY et al., Appellants.

Holographic Will — Two Instruments of Same Date — Validity —
Inconsistency—Future Contingencies.—Where a holographic will
presented for probate consists of two instruments or letters of the same
date, addressed to the children of the testator, which are substantially
the same, except as to the possibility of future contingencies which may
never happen, any inconsistencies between the two instruments which
relate only to such future contingencies, and not to the immediate de-
vise to the children of the decedent, do not affect the question of the
validity of the two instruments as constituting a will entitled to be
probated.

Id.—Probate of Will — Construction, When Immaterial.—When a
proponent presents to a probate court one or more instruments claiming
to constitute the will of a deceased person, and asks to have the same
probated as such will, the only question before the court is whether
or not such instrument or instruments constitute the will of such
deceased person; and in determining that question the court has ordi-
narily nothing to do with the construction of the proposed will, unless
the construction is necessarily incidental to determine the question as
to whether there is a will or no will.

Id.—Estate for Life—Uncertainty as to Remainder.—A clear devise
of estates for life cannot be defeated by an uncertainty as to what may
come after the death of the life tenants.

Appeal from a judgment of the Superior Court of
Alameda County.   A motion was also made to dismiss
the appeal.

The facts are stated in the opinion of the court.

*George D. Metcalf,* and *A. A. Moore,* for Victor H. Met-
calf, administrator, etc., Appellant.

*W. W. Foote, George D. Metcalf,* and *Myrick & Deering,*
for Mary H. Murphy *et al.,* Appellants.

The law requires that such an interpretation be given
to testamentary instruments as will prevent intestacy,
rather than bring it about.   (Civ. Code, sec. 1326; *State
v. Robinson,* 57 Md. 501; 2 Redfield on Wills, 3d ed., 116;
*Houser* v. *Ruffner,* 18 W. Va. 244, 256; *Booth* v. *Booth,*

4 Ves. 403; *In re Shillaber*, 74 Cal. 144; 5 Am. St Rep. 433; *Estate of Wood*, 36 Cal. 75; *Clark* v. *Ransom*, 50 Cal. 595; *Kerr* v. *Dougherty*, 79 N. Y. 327, 360; *Bernasconi* v. *Atkinson*, 17 Eng. L. &. Eq. 103; *Warner* v. *Willard*, 54 Conn. 470; *Vernon* v. *Vernon*, 53 N. Y. 351, 361; *Higgins* v. *Dwen*, 100 Ill. 554; *Smith* v. *Smith*, 17 Gratt. 268; *Irwin* v. *Zane*, 15 W. Va. 646; *Gourley* v. *Thompson*, 2 Sneed, 387; *Farish* v. *Cook*, 78 Mo. 212; 47 Am. Rep. 107; *Saxton* v. *Webber*, 83 Wis. 617; *Appeal of Board of Missions*, 91 Pa. St. 507; *Miller's Appeal*, 113 Pa. St. 459; *Roland* v. *Miller*, 100 Pa. St. 47, 50; *Given* v. *Hilton*, 95 U. S. 591, 594; *Skerrett's Estate*, 67 Cal. 585; *Fosselman* v. *Elder*, 98 Pa. St. 159; *Masterman* v. *Maberly*, 2 Hagg. 235.) A valid testamentary intent may be expressed in more than one instrument, and several documents will be probated together in order to ascertain the last will and intent of the deceased. (1 Williams on Executors, 9th ed., 138, 144; *Lemage* v. *Goodban*, L. R. 1 Pro. & D. 62, 63; *Dempsey* v. *Lawson*, L. R. 2 Pro. Div. 98, 106-08; *Clark* v. *Ransom*, 50 Cal. 595; *Estate of Skerrett*, 67 Cal. 585; *In re Goods of Graham*, 3 Swab. & T. 69, 71; *Geaves* v. *Price*, 3 Swab. & T. 71; *In re Goods of Budd*, 3 Swab. & T. 196; *In re Goods of Leese*, 2 Swab. & T. 442; *In re Goods of Morgan*, L. R. 1 Pro. & D. 323; *Stoddart* v. *Grant*, 1 Macq. 169; *In re Goods of Petchell*, L. R. 3 Pro. & D. 153; *In re Goods of Nickalls*, 4 Swab. & T. 40; *Lyon* v. *Fisk*, 1 La. Ann. 444; *Perkins* v. *Jones*, 84 Va. 358; 10 Am. St. Rep. 863; *Pepper's Estate*, 148 Pa. St. 5; *Knox* v. *Knox*, 95 Ala. 495; 36 Am. St. Rep. 235; *Van Wert* v. *Benedict*, 1 Bradf. 114; *Forman's Will*, 54 Barb. 274; *Phipps* v. *Earl of Anglesey*, 7 Brown Parl. C. 443.) A later will does not revoke an earlier will unless it does so expressly, or unless the two cannot stand together; if they can, they must be probated together. The wills in question can stand together. (Civ. Code, sec. 1296; 1 Williams on Executors, 9th ed., 138; Redfield on Surrogates, 5th ed., 196; *Stoddart* v. *Grant*, 1 Macq. 169, 173–75. See, also, *Lemage* v. *Goodban*, L. R. 1 Pro. & D. 57; *In re Goods of Petchell*, L. R. 3 Pro.

& D. 153, 156; *Lyon* v. *Fisk*, 1 La. Ann. 444 (a valu-
able case in which counsel examine very fully the
civil and canon law); *Nelson* v. *McGiffert*, 3 Barb. Ch.
158; 49 Am. Dec. 170; *Cutto* v. *Gilbert*, 9 Moore P. C. C.
131, 140; *In re Goods of Lord Howden*, 43 L. J. Pro. & M.
26, 29; *Leslie* v. *Leslie*, 6 I. R. Eq. 335.) The probate
court's only function on the probating of a will is to
determine whether the paper is properly executed;
with the effect of the instrument, or the validity, or con-
struction of its provisions, the court at that time has
nothing to do. (*In re Fleetwood*, L. R. 15 Ch. Div. 594;
*Barnes* v. *Vincent*, 5 Moore P. C. C. 200–12; *McArthur* v.
*Scott*, 113 U. S. 385, 386; 1 Williams on Executors, 185;
*Jolliffe* v. *Fanning*, 10 Rich. 200; *Prater* v. *Whittle*, 16
S. C. 40, 46; *Lilly* v. *Tobbein*, 103 Mo. 477; 23 Am. St.
Rep. 887–90; *Graham* v. *Burch*, 47 Minn. 171; 28 Am.
St. Rep. 343, 344; *Cox* v. *Cox*, 101 Mo. 168; 1 Woener's
American Law of Administration, sec. 228, p. 502; *Mat-
ter of McLaughlin*, 1 Tuck. 79; *Besancon* v. *Brownson*, 39
Mich. 388; *Lorieux* v. *Keller*, 5 Iowa, 196; 68 Am. Dec.
696; *Matter of Ellis*, 1 Connoly, 206; *Estate of Cobb*, 49
Cal. 600; *In re Soher*, 78 Cal. 477–82.) On a contest
after probate, the court has no jurisdiction over new
and distinct grounds of contest set up after the year has
expired, and it makes no difference whether such new
grounds are alleged in a separate petition, or by way of
amendment to the existing one. (*Estate of Sbarboro*,
63 Cal. 5; Code Civ. Proc., secs. 1327, 1333, 1908.) The
motion to dismiss the appeal should not be granted, as
Eugene Murphy was not an adverse party upon whom
service of notice of appeal was required. (See *Harper*
v. *Hildreth*, 99 Cal. 265, 268; *Samson* v. *Samson*, 64 Cal.
327; *Thompson* v. *Samson*, 64 Cal. 330; *Randall* v. *Hun-
ter*, 69 Cal. 82; *Jackson* v. *Brown*, 82 Cal. 275; *Hinkel*
v. *Donohue*, 88 Cal. 598; *Dore* v. *Dougherty*, 72 Cal. 232.)

*Wilson & Wilson, Garber, Boalt & Bishop*, and *Hall &
Earl*, for Respondents.

As the two wills are wholly inconsistent, and it is

impossible to ascertain their relative chronological posi-
tion, both must be treated as void. (Schouler on Wills,
sec. 411; 1 Jarman on Wills, 5th Am. ed., 343; *Phipps*
v. *Earl of Anglesey*, 7 Brown Parl. C. 443.) Under the
shorter will the daughters take a conditional fee in all
the estate of the testatrix as tenants in common (Civ.
Code, sec. 1336; *Vanderzee* v. *Slingerland*, 103 N. Y. 47;
57 Am. Rep. 701; *Kelly* v. *Kelly*, 61 N. Y. 50; *Webb* v.
*Lines*, 57 Conn. 154; *Moffat* v. *Cook*, 150 Mass. 529;
*Sugden* v. *McKenna*, 147 Pa. St. 55); but the daughter's
children, if they should have any, would take nothing
under the will either expressly or by implication. (2
Jarman on Wills, 5th Am. ed., 146; *Doe* v. *Wetton*, 2 Bos.
& P. 324; *Kinsella* v. *Caffrey*, 11 Ir. Ch. 154; *In re Rawlin's
Trust*, 45 Ch. Div. 299; *Nightingale* v. *Burrell*, 15 Pick.
113; *Dowling* v. *Dowling*, 1 Ch. App. Cas. 614; *Devecmon*
v. *Shaw*, 70 Md. 219.) The provision in the shorter
will in favor of the three named children of Eugene
Murphy is, at common law, what is known as a limita-
tion over by way of an executory devise, and under
the codes is known as a conditional limitation. (Civ.
Code, secs. 769, 778; *Nightingale* v. *Burrell*, 15 Pick. 113;
*Sherman* v. *Sherman*, 3 Barb. 387; *Jones* v. *Miller*, 13
Ind. 337; *Thomson* v. *Peake*, 38 S. C. 440; *Carson* v.
*Kennerly*, 8 Rich. Eq. 259; *Barney* v. *Arnold*, 15 R. I. 78;
*Smith* v. *Hunter*, 23 Ind. 580; *Devecmon* v. *Shaw*, 70 Md.
219; *Gambrill* v. *Forest Grove Lodge*, 66 Md. 17.) The
conditional limitation created by the first will gave the
three children of Eugene Murphy a vested remainder.
(Civ. Code, sec. 694; *Foley* v. *Foley*, 17 Hun, 235; *In re
Mape's Estate*, 20 N. Y. Supp. 69; 6 Am. & Eng. Ency.
of Law, 898; *Bruce* v. *Bissell*, 119 Ind. 525, 529; 12 Am.
St. Rep. 436; *Scofield* v. *Olcott*, 120 Ill. 362; *Chew* v.
*Keller*, 100 Mo. 362; *Leppes* v. *Lee*, 92 Ky. 16; *Farnam*
v. *Farnam*, 53 Conn. 261, 278; *Kilgore* v. *Kilgore*, 127
Ind. 276; *Roe* v. *Davis*, 1 Yeates, 332; *Hills* v. *Barnard*,
152 Mass. 67; 1 Jarman on Wills, 6th ed., 772; *Heilman*
v. *Heilman*, 129 Ind. 59; *Williamson* v. *Field*, 2 Sand.
Ch. 535; *Leighton* v. *Leighton*, 58 Me. 63.) The limita-

tion in favor of Eugene Murphy's children is to take effect only in case the three daughters "all die without children." The words "without children" should be construed as meaning "without having surviving children." (2 Jarman on Wills, 6th ed., 211, et seq., 1056, et seq.; *Hughes* v. *Sayer*, 1 P. Wms. 534; *Thecknesse* v. *Liege*, 3 Brown Parl. C. 365. Compare Civ. Code, secs. 739,764.) In such a case the devisees take cross-remainders among themselves by implication where any of them die "without children" before the limitation over takes effect. From the language used the law implies that cross-remainders were intended. (4 Kent's Commentaries, 201; 2 Blackstone's Commentaries, 381; 2 Jarman on Wills, 6th ed., 480, 1139, 1340, et seq.; *Dana* v. *Murray*, 122 N. Y. 604; *Holmes* v. *Meynel*, Raym. 452; *Wright* v. *Holford*, Cowp. 31; *Phipard* v. *Mansfield*, Cowp. 797; *Livesey* v. *Harding*, 1 Russ. & M. 636; *Seabrook* v. *Mikell*, 1 Cheves Eq. 80; *Parker* v. *Parker*, 5 Met. 134.) The limitation over under the shorter will, being in favor of the three named children of Eugene Murphy, other children who might be born to him would not, in any event, take under the will. (Civ. Code, sec. 1337.) Under the longer will the named daughters take a defeasible fee with a vested remainder in favor of the children of Eugene Murphy, and, upon the death of either of the daughters without children, the fees of all three of the daughters are divested, that of the daughter so dying passing at once to the children of Eugene Murphy, while those of the surviving daughters are *ipso facto* reduced to estates for life, with remainders in favor of the children of Eugene, which remainders would open and let in after-born children. (*Powers* v. *Bergen*, 6 N. Y. 360; *Williamson* v. *Field*, 2 Sand. Ch. 533; *Dubois* v. *Ray*, 7 Bosw. 287.) The longer will clearly expresses the wishes of the testator, and no surmise or conjecture is sufficient to warrant the court in disregarding her words as written. (*Dacre* v. *Dacre*, 1 Bos. & P. 258; *Graham* v. *Graham*, 23 W. Va. 41, 42; 48 Am. Rep. 364; Code Civ. Proc., sec. 1858.) The estates

in the daughters being totally different under each will, and the remainders over conflicting with each other, there is nothing left of the wills, and the last will revoked the former; but the court cannot say which instrument had that effect, as it does not know which was executed last, and therefore both instruments must be held void, and the probate revoked. (*Phipps* v. *Earl of Anglesey*, 7 Brown Parl. C. 443; 1 Jarman on Wills, 5th Am. ed., 341; Schouler on Wills, sec. 411; 1 Williams on Executors, 4th Am. ed., 135.) The contention that the instruments could be easily reconciled by defeating the limitations over, on the ground that they are repugnant and uncertain to the precedent estates created in the three daughters, is not well taken, as there is no uncertainty or repugnancy: 1. Because the language of the instruments does not by implication give the daughters a power of disposition (*Giles* v. *Little*, 104 U. S. 291; *Foote* v. *Sanders*, 72 Mo. 620; *Constable* v. *Bull*, 3 De Gex & S. 411; *Smith* v. *Bell*, 6 Pet. 68; *Green* v. *Hewitt*, 97 Ill. 113; 37 Am. Rep. 102; *Munro* v. *Collins*, 95 Mo. 40; *Andrews* v. *Roye*, 12 Rich. 545; *Lewis* v. *Pitman*, 101 Mo. 281); and 2. Because, even if a power of disposition be implied, it is not an absolute power, and will support the limitation over. (*Stevenson* v. *Glover*, 50 Eng. C. L. 447; *Beechcroft* v. *Broome*, 4 Term Rep. 441; *Doe* v. *Pearson*, 3 East, new ed., 350; *Bibbins* v. *Potter*, 10 Ch. Div. 733; *Terry* v. *Wiggins*, 47 N. Y. 514; *Smith* v. *Van Ostrand*, 64 N. Y. 284; *Trustees of Theological Seminary* v. *Kellogg*, 16 N. Y. 93; *Ducker* v. *Burnham*, 146 Ill. 9; 37 Am. St. Rep 135; *McMurry* v. *Stanley*, 69 Tex. 232.) But even if there were an implied power of absolute disposition in the daughters, the limitation over in each will would, nevertheless, be valid, as the common-law rule that an executory devise cannot co-exist with an absolute power of disposition in the first taker has been abolished. (Civ. Code, sec. 740; *Grayston* v. *Clark*, 41 Hun, 125; *Wells* v. *Seeley*, 47 Hun, 109; *Leggett* v. *Firth*, 53 Hun, 152; 132 N. Y. 7; *Simpson* v. *French*, 6 Demarest, 108.) The testator did not intend in either will to leave a life

estate to her daughters, as the provisos for the death of either daughter referred to, is the death of such daughter in testatrix's lifetime. (*Vanderzee* v. *Slingerland*, 103 N. Y. 53; 57 Am. Rep. 701. See, also, *Fowler* v. *Ingersoll*, 127 N. Y. 478; *Nelson* v. *Russell*, 135 N. Y. 137; *Patterson* v. *Earhart*, 29 Week. Law Bull. 313; *Crossman* v. *Field*, 119 Mass. 170; *Goodwin* v. *McDonald*, 153 Mass. 481; *Kerr* v. *Bryan*, 32 Hun, 51; *Kelly* v. *Kelly*, 61 N. Y. 47; *Mickley's Appeal*, 92 Pa. St. 514; *Matter of New York etc. Ry. Co.*, 105 N. Y. 92; 59 Am. Rep. 478; *Mead* v. *Nebbin*, 14 N. Y. Supp. 733; *Quackenbos* v. *Kingsland*, 102 N. Y. 128; 55 Am. Rep. 771; *Brown* v. *Lippincott*, 49 N. J. Eq. 44; *Cowley* v. *Knapp*, 42 N. J. L. 297; *Burdge* v. *Walling*, 45 N. J. Eq. 10–16; *In re Durfee*, 17 R. I. 639; 3 Jarman on Wills, 605; *Webb* v. *Lines*, 57 Conn. 154; *Moffat* v. *Cook*, 150 Mass. 529; *Sugden* v. *McKenna*, 147 Pa. St. 55.) As there is no distinct and independent intent shown in the will to leave the daughters a life estate, the court cannot construe it so as to ingraft such an intent thereon. (*Coster* v. *Lorillard*, 14 Wend. 349, 350.) It is the duty of the probate court, when several testamentary instruments are offered for probate, each of which contains an express revocatory clause, to determine their true chronological order, and to admit to probate only the last will. (*Reffell* v. *Reffell*, L. R. 1 Pro. & D. 139; *Crossman* v. *Crossman*, 95 N. Y. 145; *Van Wert* v. *Benedict*, 1 Bradf. 116; *Le Mage* v. *Goodban*, 35 L. J. Pro. & M., N. S., 28; *Dempsey* v. *Lawson*, L. R. 2 Pro. Div. 98; *In re Petchell*, 43 L. J., N. S., 22; *Henfry* v. *Henfry*, 2 Curt. Ecc. 468; *Plenty* v. *West*, 1 Rob. Ecc. 264; *Stride* v. *Cooper*, 1 Phillim. 334; Code Civ. Proc., sec. 1330.) The appeal should be dismissed because the notice of appeal was not served on all the adverse parties. (*Toy* v. *San Francisco etc. R. R. Co.*, 75 Cal. 542; *In re Medbury*, 48 Cal. 83; *Harper* v. *Hildreth*, 99 Cal. 265; *De Armaz* v. *Jaynes* (Cal., Sept. 13, 1893), 34 Pac. Rep. 223; *Cotes* v. *Carroll*, 28 How. Pr. 436; *Judson* v. *Love*, 35 Cal. 463; *Sanchez* v. *Roach*, 5 Cal. 248; *Shartzer* v. *Love*, 40 Cal. 93; *Lyons* v. *Roach*, 72 Cal. 85; *Sheldon* v.

*Dalton*, 57 Cal. 19; *McKinley* v. *Tuttle*, 42 Cal. 571; *Moyle* v. *Landers*, 78 Cal. 100; *McCreery* v. *Everding*, 44 Cal. 284; *Gleason* v. *Dodd*, 4 Met. 333; *Thomas* v. *Thomas*, 57 Md. 504; *Clayton* v. *Preston*, 54 Tex. 418; *Gamble* v. *Daugherty*, 71 Mo. 599; *Lynn* v. *Lowe*, 88 N. C. 478; *Dirmeyer* v. *O'Hern*, 39 La. Ann. 961.) The judgment appealed from cannot be reversed without affecting the interests of the estate of Eugene Murphy. The judgment must stand or fall as a whole. (*In re Freud*, 73 Cal. 555.)

McFarland, J.—Anna L. Murphy, deceased, died at London, England, on March 30, 1891. She was a widow at the time of her death; and her heirs at law were her three sons, Eugene K. L. Murphy, Samuel J. Murphy, and Daniel T. Murphy, her married daughter, Anna L. Wolseley, and her three unmarried daughters, Mary Helen Murphy, Frances Josephine Murphy, and Mary Margaret Isabella Murphy, all of legal age. She left property in Alameda county, California. On June 20, 1891, Victor H. Metcalf filed a petition in the superior court of said county, in which he set forth that said deceased left two certain written instruments, each dated May 13, 1890, which he alleged to be her will, and prayed that they be admitted to probate as such will. He also averred that the heirs competent to administer had requested in writing that he be appointed administrator of the estate of the deceased, and prayed that he be so appointed. Such proceedings were thereafter had that on July 20, 1891, said two instruments were regularly admitted to probate by said court as constituting the last will of said deceased, and said Metcalf was appointed administrator with the will annexed, and duly qualified as such.

Afterwards, on July 19, 1892, within the year prescribed by the code, the said Anna T. Wolseley, Samuel J. Murphy, and Daniel T. Murphy filed in said court a petition to revoke the said probate of said will. The grounds on which the petition was based were that said

two instruments "do not, nor does either of them, constitute the last will and testament of said Anna L. Murphy"; that they were never signed, executed, declared, etc., by the deceased as her will, or attested as required by law; that they were not intended by her as her will, or regarded by her as a completed will; and that they were only a memorandum to be submitted to her attorney for advice, from which a will was to be made in the future. Afterwards contestants filed an amended petition, in which they alleged the additional grounds that said instruments were procured by fraud and undue influence, and set up at length and in detail the facts that said deceased was of unsound mind, and was fraudulently procured to make said instruments by the controlling and undue influence of certain of said unmarried daughters, who made false representations to her about the conduct of the contestants, etc. Issues of fact were raised by answers to these petitions, and the whole case was tried by the court without a jury. After the evidence had all been taken the contestants again made an amendment to their petition by averring that it could not be shown which of said instruments was, in point of time, last executed; and "that said two documents are wholly inconsistent and irreconcilable, each with the other, and cannot and do not together constitute a last will." This last amendment was made more than two years after the probate of said instruments as the last will of the deceased. The court made findings in which it found all the material issues *of fact* against contestants and in favor of the proponents of the will. That is, the court found that on May 13, 1890, the deceased duly executed each of said instruments as an holographic will; "that both of said documents were not, nor was either of them, simply or only a memorandum to be submitted to an attorney," etc., "but that each of said instruments was at the time it was executed as aforesaid intended to be and was the will of said deceased"; that at the time of their execution "and continuously thereafter, until the time of her death, the

said Anna L. Murphy was of sound and disposing mind
and memory, free from duress, menace, fraud, or undue
influence of every character, and she was fully compe-
tent to make a last will and testament; and the said docu-
ments were not made and executed under any fraud,
imposition, or undue influence of her daughters, Mary
Helen Murphy and Frances Murphy, or either of them,
or of any person whatever, but were made and executed
as the free and voluntary and uninfluenced act and deed
of said Anna L. Murphy." The court, however, decided
the case in favor of contestants, and revoked the pro-
bate on the ground stated in the aforesaid last amend-
ment of contestants, viz., that the said two instruments
are inconsistent and irreconcilable. The court found,
under the heading of "Facts," "that said two docu-
ments are wholly inconsistent and irreconcilable, each
with the other; and it cannot be shown from the evi-
dence which, in fact, of said two documents was exe-
cuted last, and that no act of said deceased subsequent
to the execution of said documents, or either of them,
has explained them"; and that "it is impossible to
ascertain the relative chronological position of said two
conflicting documents." And under "Conclusions of
Law" the court found that "said two documents being
wholly inconsistent and irreconcilable each with the
other, neither one nor both has been proved to be the
will of the deceased; that by reason of the foregoing
said Anna L. Murphy died intestate; that the probate
of said instruments heretofore granted herein must be
annulled and revoked." Judgment was accordingly
rendered revoking the probate, and proponents appeal
from the judgment upon the judgment-roll. As the
court finds that the two instruments were executed on
the same day, and that there is no evidence to show
which was on said day executed last, it is evident that
the questions presented to this court are to be deter-
mined upon consideration of the said instruments
themselves. Counsel for both sides have argued the
case with great industry and ability; and in their briefs

they have presented many authorities, both English and American, and have quoted copiously therefrom. We do not deem it necessary, however, to notice here many of the cases cited. They will, no doubt, appear in the official report of the case. We will give here merely the results of a consideration of the authorities, and of the principles which we think applicable.

One of said instruments is as follows:

"LONDON, ENGLAND, May 13, 1890.

"Being in perfect health and in full possession of all my faculties, yet knowing the uncertainty of life, I write this letter to my children, that they may know what to make distribution of all my property when I die. Therefore, I wish it plainly understood that I desire all of which I am possessed at my death, whether real estate or personal property, of whatever description, to be equally divided between my three daughters, Mary Helen Murphy, Frances Josephine Murphy, Mary Margaret Isabella Murphy. Should either of these three daughters die, I wish her portion to be divided between the two surviving daughters. In case these daughters they all die without children, I wish the children of my eldest son, Eugene Kelly Murphy, the entire property they may leave to inherit share and share alike, Eugene Besson Murphy, Mabel Murphy, Charles Murphy.          ANNA L. MURPHY,

"12 Charles street, Berkeley square.

"May 13, 1890, London, England."

The following is the other instrument:

"May 13, 1890, LONDON, England.

"Being in perfect health and in full possession of all my faculties, yet knowing the uncertainty of life, I write this letter to my children, that they may know what distribution I wish made of all the property of which I may be possessed when I die. Therefore, I wish it plainly understood that I desire all the property that I possess at my death, either real estate or personal property, jewels, pictures, plate, glass, furni-

ture, carriages, my gas shares, all and whatever descrip-
tion, every thing that I possess, to be divided equally
between my three daughters, Mary Helen Murphy,
Frances Josephine Murphy, Mary Margaret Isabell Mur-
phy. Should either of these three daughters die, I wish
her portion to be divided between the two surviving
daughters. In case either or all of these daughters die
without children, I wish the children of my eldest son,
Eugene Kelly Murphy, to inherit from my portion that
I leave the three daughters whatever they may leave
when they die. I wish these children of my eldest son,
Eugene, to have share and share alike of whatever my
three daughters may leave of what I have given them,
both personal and real estate. ANNA L. MURPHY,
　　　　　　　　" 12 Charles street, Berkeley square.
" May 13, 1890, London."

Upon first glance these two instruments seem to be
substantially the same. Upon closer inspection, how-
ever, there is to be seen the shadow of a possibility that
at some uncertain future period of time, if some events
should happen, which may never happen at all, there
might be some difficulty in determining where, under
these instruments, certain contingent remainders would
vest. It is contended that under one of the instruments,
upon the death without issue of the daughters named in
the instruments, what they " may leave" of the property
would go to the three named children of Eugene Kelly
Murphy—Eugene Besson, Mabel, and Charles; while,
under the other, it would go to all of the children of
Eugene Kelly, including any others who might be there-
after born and living when the remainders should take
effect in possession. (Although the question is perhaps
not affected by it, still it appears that Eugene Kelly
Murphy has since died, and therefore can have no other
children; so, as a matter of fact, the question can ac-
tually never arise.) The contention of respondents is
that because, if the said daughters should die childless,
and if there should be children of Eugene Kelly other
than the three named, and if there should be a conten-

tion between said children as to said remainders, a court could not determine in whom said remainders vested; *therefore*, the whole will is to be held void, and the three daughters are to lose the properties and estates which by the will are devised *to them*. There is also another inconsistency contended for by respondents, in this: that under one of the instruments there is a conditional limitation in favor of Eugene's children upon the death childless of either of the three daughters; while under the other instrument the limitation is dependent upon the death of all the daughters without children. These are the two main grounds of alleged inconsistencies in the two instruments; although there is something said about differences in cross-limitations to the survivors of the three daughters, etc.

We are satisfied that the contention of respondents as to the total invalidity of the two instruments as a will cannot be successfully maintained; and that upon the findings the petition for the revocation of the probate should have been denied.

It is not necessary for us to determine here—what a court may never be called upon to determine—whether or not there *are* any such inconsistencies in the two instruments as those contended for by respondents. They refer only to future contingencies which may never happen, and in no way affect the question whether or not the said two instruments constitute a will entitled as such to be probated; and the latter question is the only one here involved. When a proponent presents to a probate court one or more instruments claimed by him to constitute the will of a deceased person, and asks to have the same probated as such will, the only question legitimately before the court is whether or not such instrument or instruments constitute the will of such deceased person. In determining that question the court has ordinarily nothing to do with the construction of the proposed will. This court, in *Estate of Cobb*, 49 Cal. 600, used this language: " The instrument offered being evidently of a testamentary character, upon ap-

plication to admit it to probate, the inquiry is only as to the mental condition of the executrix; whether she was acting under duress, menace, fraud, or undue influence; whether the will was duly executed, and the like. The other questions attempted to be raised by the objections filed in the case concern the construction to be placed upon the will, and cannot be considered until it shall have been admitted to probate." It may be conceded, for the purposes of the case at bar, that under peculiar circumstances a court, in determining whether a certain instrument is entitled to probate, may look somewhat into the body of the instrument; but this exercise of the power of construing is admissible only as necessarily incidental to the determination of the question: Will, or no will? For instance, a will is generally defined to be the disposition of property to take effect after the death of the testator; and it has been held in one or two cases that an instrument in the form of a will, and duly executed, which does not dispose of any property, is not a will—as where the instrument merely expressed a desire that certain heirs should be disinherited. (*Coffman* v. *Coffman*, 85 Va. 459; 17 Am. St. Rep. 69.) There are decisions contrary to this; and it has been held that an instrument in which an executor is appointed without any disposition of property should be probated as a will. But assuming the rule to be as held in *Coffman* v. *Coffman*, 85 Va. 459, 17 Am. St. Rep. 69, we find, upon looking into the instruments before us, that the rule has no application here. There is no lack here of a disposition of property. By the instruments in question, and by each of them, all the property of the testatrix is given to the three daughters in fee, with a possibility of the fee being defeated after their deaths, and upon the happening of remote contingencies. Respondents admit that these instruments give to the three daughters *estates for life* in all property of the deceased; and this admission is determinative of the case in favor of appellants. Can an estate for life be defeated by an uncertainty as to

what may come after the death of the tenant? Counsel say that the testatrix did not intend to give them an estate for life. But she clearly intended to give them an estate greater than an estate for life—an estate which included an estate for life. If, by the language which she used, she failed to devise a greater estate, but did devise an estate for life, the latter estate was surely created, and is in all respects a perfect estate. We are not to be considered as holding that only a life estate was created; we are putting the case in a light most favorable to respondents; and looking at it in that light we see clearly that the two instruments taken together constitute the will of the deceased, and that its probate should not be disturbed. The instruments are of even date, and were executed on the same day, and should be taken together to be the testatrix's will, unless, in the language of the code, they are "wholly inconsistent." Instead of being wholly inconsistent, they are in most of their material parts substantially identical. Those parts of them claimed to be inconsistent relate to questions which may never arise—to contingencies which may never happen. If such questions should ever arise courts might find but little difficulty in disposing of them. At all events they are not here now demanding solution. Devises of large properties and estates should not be defeated by acute speculations about what might possibly occur after the deaths of the devisees.

The following sections of the Civil Code are applicable to the case at bar: Sec. 1320: "Several testamentary instruments, executed by the same testator, are to be taken and construed together as one instrument." Sec. 1326: "Of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy." Sec. 1296: "A prior will is not revoked by a subsequent will, unless the latter contain an express revocation, or provisions wholly inconsistent with the terms of the former will; but in other cases the prior will remains effectual so far as consistent with the provisions of the subsequent will."

The foregoing views make it unnecessary to consider appellants' point that the amendment to respondents' petition, upon which the case was decided, was made two years after the probate of the will, and, therefore, should not have been considered.

Respondents suggest that, as the record contains only the judgment-roll, certain findings must be taken as warranted by evidence not before us. But the findings show clearly the theory on which the decision was made, the facts upon which the theory rested, and that there was no evidence to explain those facts. These *facts* were that the two instruments were executed on the same day, and that there was nothing to show which of the two was executed last. Upon these facts the court held that the instruments were wholly inconsistent with each other; and that, as it cannot be determined which was executed last, therefore neither the two together, nor either one of them, was the will of the deceased. All the other findings upon the subject are mere inferences from the facts above stated. It was, therefore, wholly unnecessary for appellants to bring up any evidence; their appeal rests upon the *facts* found.

Respondents have a motion pending to dismiss the appeal upon the ground that the notice of appeal was not served upon the administrator of Eugene K. L. Murphy, deceased. The motion must be denied. It is doubtful if he was a person necessary to be served, as it appears that said Eugene was not hostile to appellants, but was in sympathy with them. If, however, it was necessary to serve his representative, we think that the evidence shows such service.

The motion to dismiss the appeal is denied, and the judgment is reversed, with directions to the superior court to enter judgment against the contestants, and denying the petition for the revocation of the probate of the will.

DE HAVEN, J., and FITZGERALD, J., concurred.

Hearing in Bank denied.

NOTE.—In their petition for a rehearing counsel for respondents complain of the statement in the opinion that they "admit that these instruments give to the three daughters estates for life." There is, no doubt, some just foundation for the complaint; for, upon further examination of their briefs, I find that no such express admission was made. The statement in the opinion must have been the result of the impression which the general course of the argument made upon the mind of the writer. But, of course, the decision of the case was in no manner affected by the said statement.