[L. A. No. 22061. In Bank. Sept. 25, 1952.]

Estate of DANIEL EVERETT LAMONT, Deceased. WILLIAM L. GUNNESS, Respondent, v. BELLA LAMONT et al., Appellants.

Willis Sargent and Sidney H. Wyse for Appellants.

Gunness & Graves and Joseph L. Graves for Respondent.

GIBSON, C. J.—This is an appeal from an order denying probate of a will, and the sole question to be determined is whether the will was properly attested by two witnesses in compliance with section 50 of the Probate Code.

The instrument, which was typewritten, reads as follows:

"June 19, 1950

"To Whom it May Concern:

"I, Daniel Everett LaMont, do hereby bequeath my estate and its entire residue to my sister, Bella LaMont, of the home address.

"My sister, Bella LaMont, and my nephew, Fred C. Smith, 523 Cecil St., Monterey Park, Calif., whose signatures appear below are to jointly administer the estate without bond. My nephew, Fred C. Smith, is to act as Guardian for my brother, Albert LaMont.

s/ D. E. LaMont
D. E. LaMont

s/ Bella LaMont
Bella LaMont

WITNESS: s/ Klari Moore
Address: 1001 So. 1st St.
Alhambra, Calif.

s/ Fred C. Smith
Fred C. Smith

WITNESS: s/ Helen B. Smith
Address: 523 Cecil St.
Monterey Park,

Notary Public
Calif."

It is conceded that Helen B. Smith is a qualified witness. Klari Moore did not sign as a witness until several days after the will was executed, and because of the circumstances

under which her signature was affixed, proponents do not claim she qualifies as a witness. Nor do proponents rely upon Bella LaMont as a witness since, if her signature were necessary to due execution, she could not take the entire estate under the will. (Prob. Code, § 51.) Accordingly, the question to be determined is whether Fred C. Smith, whose signature appears on the face of the will, can be counted as a second attesting witness.

The will was prepared by Helen Smith, Fred C. Smith's wife, at the testator's request about a month before it was signed. Decedent was under the impression that the will had to be notarized, and Fred consulted a notary about preparing it. A blank space was provided for the notary's signature, but the instrument was never notarized. At the time of the signing, Bella, Fred and Helen were all seated around a table with the testator, and they affixed their signatures to the will in the presence of each other. They testified that they saw the testator sign and that he declared in the presence of all of them that the document was his will. Each of them testified that he or she was requested by the testator to sign it as a witness. Although the testimony was uncontradicted, the trial court did not believe that the testator specifically asked either Fred or Bella to sign the will "as a witness," and, in denying probate, made the following finding: "That Fred C. Smith and Bella LaMont were not requested by said decedent to affix their signatures to said will as witnesses, nor did they affix their signatures to said will as witnesses, but said parties were present at the time the testator executed said will and were requested by him to sign said will as executor and executrix respectively."

There can be no question that the testator requested Fred to affix his signature to the will, and there is no testimony that he was asked by the testator to sign as executor. The only possible support in the record for the finding that he did not sign as a witness, but instead signed as executor, must be derived from the body of the will, which provides that Fred and Bella, "whose signatures appear below are to jointly administer the estate," and from the additional fact that, unlike Klari Moore and Helen Smith, Fred is not described in the instrument as a "witness." The fact that Fred was designated an executor does not, of course, disqualify him from acting as a subscribing witness (*Estate of Haupt*, 200 Cal. 147, 151 [252 P. 597]), and even if it be assumed that the court was justified in disbelieving the testimony that Fred

was asked to sign "as a witness," it does not follow that the will was improperly executed.

The decisive question is whether there has been substantial compliance with the requirements of subsection (4) of section 50 of the Probate Code, which provides that there must be at least two attesting witnesses, "each of whom must sign the instrument as witnesses, at the end of the will, at the testator's request and in his presence." ██ The purpose of the formalities prescribed by the statute is to provide against false and fraudulent wills and to afford means of determining their authenticity. ██ The function of an attesting witness to a will is to take note that those things are done which are required by the statute and to subscribe his name to the instrument. (See *Estate of Montgomery*, 89 Cal. App.2d 664, 672 [201 P.2d 569].)

██ In the present case the events surrounding execution of the will include every formal protection intended to be provided by the statute and show that its purposes have been accomplished. The testator told Fred that the instrument was a will and requested him to sign it, and Fred saw the testator sign and affixed his own signature in the testator's presence. All of this took place in the presence of Helen Smith. Fred can testify to the authenticity of the document and to the circumstances surrounding its execution, and his signature serves to identify it. In view of these facts it is immaterial that Fred may have thought he was signing in the capacity of executor. ██ There is nothing in the statute which requires proof of a specific intent to act solely as a witness, and, in our opinion, no such intent is necessary where the person who is relied on as a witness observed all of the events to which he is required to attest and signed the instrument. (*Cf. Estate of Montgomery*, 89 Cal.App.2d 664, 668 et seq. [201 P.2d 569].)

██ Likewise, it is immaterial that the testator may have failed to use the word "witness" in requesting Fred's signature or may have been under a mistaken belief that a person who is named as executor must sign the will. ██ It is well settled that a testator need not follow any particular form in asking a person to attest his will. For example, the request need not be express but may be implied from the facts and circumstances surrounding the execution. (*Estate of Dow*, 181 Cal. 106, 114 [183 P. 794]; *Estate of Silva*, 169 Cal. 116, 120 [145 P. 1015].) ██ Fred was asked to sign the instrument as part of its formal execution, and it was not necessary

for proponents to prove that the testator had any specific intent with regard to the particular capacity in which Fred signed. Any other interpretation of the statute might make it a trap rather than a safeguard.

The order denying probate is reversed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Respondent's petition for a rehearing was denied October 23, 1952.