[L. A. No. 4561. Department Two.—October 13, 1916.]

## In the Matter of the Estate of JANE BOYLAN COOK, Deceased.

WILL—PETITION FOR PROBATE—CONSTRUCTION OF WILL NOT INVOLVED.— On a petition for the probate of one or several writings claimed to constitute a will, the only question before the court is, does it or do they constitute the will of the deceased—is a testamentary disposition of property intended and disclosed by the writings? In determining that question, the court cannot ordinarily enter into any consideration of the construction of the will, resolve inconsistencies in the disposition of property, or construe the provisions of the instrument.

ID.—WILL EMBODIED IN SEVERAL LETTERS.—Certain letters written by the deceased to her brothers and sisters and to her business agent, immediately prior to her undergoing a surgical operation, are held to have been written *animo testandi*, and to constitute the last will of the deceased.

ID.—WILL CONDITIONED UPON DYING OF PARTICULAR DISEASE.—Under the circumstances, taken in connection with the language employed by the deceased in her letters, the effect of such letters as a will

CLXXIII Cal.—30

was conditioned not upon the fact that she should die as the immediate effect of the contemplated operation, but upon dying from the disease which the operation was intended to relieve. The evidence is sufficient to show that the deceased died of such disease.

ID.—LETTERS OF ADMINISTRATION WITH WILL ANNEXED—RIGHT OF SURVIVING HUSBAND — TAKING PORTION OF PERSONAL ESTATE.— Under sections 1350a and 1365 of the Code of Civil Procedure, where a will of a testatrix appoints no executor, her surviving husband, who took by bequest no portion of her personal estate, is not entitled to letters of administration with the will annexed. Such letters are properly issued to a brother, who was a legatee under the will.

APPEAL from an order of the Superior Court of Orange County admitting a will to probate. Z. B. West, Judge.

The facts are stated in the opinion of the court.

West, Koepsel & Eden, for Appellant.

Tipton & Cailor, and Gonsalves & Keller, for Respondent.

LORIGAN, J.—The deceased on April 25, 1915, being about to go to a hospital to have an operation performed, wrote and sent three letters—one to a brother, another to her sisters and a brother jointly, and a third to a friend who was her business agent. She died on May 26, 1915. A petition was filed in the superior court of Orange County for the probate of the several letters referred to, as constituting the last will of decedent, and as no person was nominated therein as executor, that letters of administration with the will annexed be issued to John H. Higgens, a brother mentioned in one of the proffered letters as a legatee, and who was petitioner for the probate of the will. W. E. Cook, the husband of the deceased, filed a contest to the probate of said letters as the last will of deceased on the grounds, first, that the said letters were not testamentary writings, or testamentary in character, and, second, that even if testamentary in character, nevertheless they should be denied probate, because their taking effect as the last will of deceased was made conditional by her upon her death under an operation she was about to have performed when they were written; that her death did not occur therefrom, and hence said letters never became effective as the will of deceased. Contestant also prayed that in

the event of probate of said letters as the will of deceased, he, as surviving husband of deceased, be appointed administrator with the will annexed.

At the trial the court determined that the letters were of a testamentary character, admitted them to probate as the last will of deceased, and appointed the petitioner, the brother of deceased, administrator with the will annexed. The contestant husband appeals from the order.

As to the points made by appellant for a reversal: It is claimed, first, that the letters of deceased offered for probate were not testamentary in character. The letters were entirely written, dated, and signed by the deceased and sent to the parties to whom they were addressed. The evidence indicates, and the letters themselves state, that the deceased had been suffering for upward of fifteen or twenty years from a malignant disease, and had reached that condition of physical disability where the only hope held out to her for relief was through an operation which she had consented to undergo. It was the day before her departure for the hospital for that purpose that the three letters were written. She stated therein her intention of going to the hospital; that she had been very sick and felt that the only way to regain her health was through an operation; and that while everything might turn out in her favor, she felt that her condition was more serious than the doctor thought, and that she had reason to believe she might not live through it. She then proceeded to declare what she wished done respecting her funeral. She specified the cemetery and lot in which she wished to be buried, the kind of headstone she wanted and the inscription to be placed on it, and named the minister she wished to perform her funeral service. Standing alone, these matters would probably evidence only a desire as to the disposition of her body after her death. But, in addition, she then proceeded to make a disposition of her property. She declared that she wanted Pansy to have all her jewelry except a diamond ring. She wanted the proceeds of a mortgage to be collected by her business agent, to whom one of the letters is written, and such proceeds to be turned over to her brother James W. Higgens, together with the balance due "on the Neffs payments." She directs further that all her clothing be sent to Alice. In one of the letters she declared that "after all expenses is paid if there is anything left I want it

equally divided with my father Mr. H. Higgens . . . my brother Mr. J. H. Higgens . . . my brother Mr. C. W. Higgens . . . my brother J. W. Higgens . . . my sister Mrs. Alice Grey, or Lovely." It is the claim of appellant that this last clause in the will had relation only to a disposition of the proceeds of a diamond ring, which she directed to be sold, and that even this disposition found in one letter is inconsistent with her declaration in another letter that her sister Emma is to have the ring; hence creating an uncertainty as to whom the ring or its proceeds is given. Respondent appears to assert that the quoted clause constituted a residuary devise of the estate of the deceased. But this court will not, nor did the trial court, undertake to construe the will of deceased manifested by her several letters. The only question before the superior court on a petition for the probate of one or several writings claimed to constitute a will is, does it or they constitute the will of the deceased—is a testamentary disposition of property intended and disclosed by the writings? The court is limited solely to that inquiry. In determining whether an instrument proffered for probate is, or is not, a will, the court cannot ordinarily enter into any consideration of the construction of the will; resolve inconsistencies in the disposition of property or construe the provisions of the instrument. These are matters which may properly arise only after the probate of the will (*Estate of Cobb*, 49 Cal. 599; *Estate of Murphy*, 104 Cal. 554, [38 Pac. 543].) As to the ring, certain it is that by the letters she intended, in connection with the other dispositions we have referred to, to give it or its proceeds to someone named in them, and for the purpose of determining whether or not the letters amount to a testamentary disposition of it that fact need only be considered. We are satisfied from the circumstances under which deceased wrote these letters, and the language used by her in them, that they were written *animo testandi*, and the trial court properly determined they constituted the last will and testament of the deceased unless the further claim made by appellant against their testamentary effect is meritorious.

This claim of appellant is, that the deceased made it a condition precedent to these letters becoming effective as her will that she should die as the result of the operation which was to be performed; that she did not die therefrom but re-

covered, and died from an entirely new and different disease; that hence the letters never became effective as her will.  As to this claim appellant contends that it is supported by evidence of the nature of the operation performed and its results, taken in connection with language employed by the deceased in her letters.  In the letters the deceased uses the expressions, "if I should die from the operation," and "in case I do not live through the operation," and "I have reason to believe I will not live through it," and the instructions are to be carried out "only in case I do not live," and "I want you to see it is done in case of my death only."

As to the operation: The deceased went to the hospital on April 26, 1915, and the next day an operation was performed on her.  When she was taken to the hospital she was in a weak and debilitated condition.  She did not at all improve after the operation; she never recovered her strength but grew gradually weaker.  After remaining three weeks in the hospital she was taken home, where she still continued to fail, and a week afterward—on May 26, 1915—she died; just a month after the operation was performed.  An autopsy disclosed that she died of gastric ulcers, a disease from which she had suffered for some twenty years.  It appears that she was never informed, nor did she know, the nature of this disease from which she so long suffered.  All she knew was that it had so far afflicted her that the only relief she could hope for was through an operation of some kind, which she went to the hospital to have performed.  The evidence does not disclose whether she had ever been previous to that time the patient of the physician who performed the operation on her.  This operating physician, however, diagnosed her case as involving a diseased condition of other organs of the body than her stomach, and operated on her for those troubles which he said he found existed.  This operation, as far as it went, was successfully performed, but it was not an operation for the principal and fatal disease from which the patient was suffering and from which she shortly thereafter died. It was in evidence that in the advanced stage of her stomach disease at the time she went to the hospital no operation could have been performed which would have relieved her condition, and that she would have died from her disease of the stomach about the time probably that she did even if she had not undergone the operation which was performed.  While it

is claimed by appellant that the language in the letters themselves show that they were only to become testamentary should she die under, or as a result of, the operation itself, we cannot agree with him that such is the reasonable and fair construction to be given to the various expressions used in them. The purpose of her going to the hospital was to be relieved of her wasting disease through an operation. There is nothing to show she knew anything of the kind or extent of the operation to be performed. As we have said, she did not even know the nature of her disease. All she knew was that her disease, whatever it was, had finally reached that stage where an operation was essential to prolong her life. She, of course, did not believe that the proposed operation would be so unsuccessfully performed that she would die under its effects. She doubtless had confidence in the competency of the physician to perform the operation, and an assurance that it would be successfully performed, which she believed, or she would not have consented to have undergone it. What she undoubtedly had in mind in referring to the operation in the various expressions used by her was the possibility of dying from the disease which the operation was intended to relieve, and not from the effects, or as a result of, the operation itself. Her doubt was whether the operation would be effective to cure her. This is fairly disclosed in one of the letters where, after speaking of the contemplated operation, she says: "Everything may turn out in my favor, but something tells me that it is more serious than the doctor thinks." This evidently refers to her disease, and the improbability, on account of her long suffering and debilitated condition, and the stage that the disease had reached, of her recovering from her malady even through an operation.

Nor is there any merit in the claim of appellant that the deceased died from a wholly new and different disease than the one she was operated on for. The most that can be said is that the operation which was performed did not reach the real disease with which she was afflicted. But, she did not die from any new or different disease than the malignant one from which she was gradually dying when she went to the hospital to have an operation performed for her relief, and from which she did die notwithstanding an operation. It is of no consequence what the diagnosis of her case by the operating physician was, or what the disease was for which

he operated on her. An operation was intended to relieve her, as far as an operation could, from any and all disease from which she was suffering, which was the reason she submitted to it and he performed it. He undoubtedly thought that the operation he performed would be effectual for that purpose, and the deceased no doubt believed that it was intended to and might accomplish that result. The operation, however, did not relieve her from the fatal disease with which she was afflicted; she did not recover from it as a result of the operation but died directly from it. This was the event, or condition, she had in mind, the happening of which was to make the letters effectual as her last will—a failure to recover from her disease under an operation, and her death from the disease notwithstanding it—a condition which the trial court found to have occurred and which we are satisfied may not be disturbed.

Appellant complains of the action of the court in sustaining a demurrer to a portion of his answer and contest in which he presented the issue as to whether the deceased died from the effects of the operation, or had entirely recovered therefrom and died from the effects of a wholly different disease. This point is based on a construction placed by counsel for appellant on the language in the order sustaining the demurrer of respondent in part, and overruling it in part. But this is a matter we need not consider, because the appellant was not injured whatever the effect of the ruling was, as on the hearing he was informed by the court that the demurrer as sustained did not affect that issue; that he was entitled to present his evidence on it, which he did as fully as he desired and without limitation, and the court found upon the issue against him. The evidence so presented on this issue is that which we have just finished discussing.

The last claim of appellant is that the court—no executor being nominated in any of the letters constituting a will—should, on admitting the will to probate, have granted letters of administration with the will annexed to him as the surviving husband of the testatrix. But this point is not well taken. Section 1365 of the Code of Civil Procedure, applied to section 1350a thereof, governs in the matter of granting letters of administration with the will annexed to the same extent as it governs the granting of letters of administration in cases of intestacy, and in both cases, under the terms of

said section 1365, those only are entitled to letters who in case of intestacy are entitled to succeed to the personal estate of the deceased or some portion thereof and who in case of testacy take. by bequest some portion of that personal estate. The brother of the deceased who was appointed administrator with the will annexed filled the requirement of the statute. The contestant did not. The brother was a beneficiary under the will, and entitled thereunder to take a portion of the personal estate of the deceased. The contestant husband took nothing at all under the will, and hence under the section cited was not entitled to letters. Further discussion of this claim of appellant is unnecessary, as the decision in the *Estate of Crites,* 155 Cal. 392, [101 Pac. 316], disposes of it adversely to his contention and in harmony with the ruling of the trial court.

The order appealed from is affirmed.

Melvin, J., and Henshaw, J., concurred.