[Civ. No. 13578.   Second Dist., Div. Two.   May 8, 1942.]

Estate of LEOPOLD PAGEL, Deceased.   CEDARS OF LEBANON HOSPITAL, Appellant, v. ISAAC PAGEL et al., Respondents.

Mitchell, Silberberg, Roth & Knupp and Leonard A. Kaufman for Appellant.

Fred M. Cross and Schell & Delamer for Respondents.

HANSON, J. pro tem.—In its final analysis the question for decision is whether a letter dated and signed by the decedent in his own handwriting and directed to the Cedars of Lebanon Hospital is or is not to be regarded as a testamentary disposition of his property to the hospital. The letter was admitted to probate as an holographic will, but thereafter at the behest of a brother and nephew of the decedent its probate was revoked on the ground that it did not disclose an intent that it should operate as a will. Accordingly, Cedars of Lebanon Hospital is here as appellant, contending, not that the document on its face was necessarily executed with *animus testandi*, but that the court erred prejudically in refusing to receive and consider parol evidence of certain declarations by decedent, made prior and subsequent to the execution of the letter, bearing on decedent's intent that the letter should operate as a will.

We shall state the facts as they could have been found on the evidence received, refused and stricken, as we think that on all of such evidence the court would not have been entitled to find for appellant.

The decedent having been a patient of Cedars of Lebanon Hospital some time prior to October 15, 1939, he was again admitted therein as a patient on or about that date. He died in the hospital on November 26, 1939. On November 21, 1939, the decedent requested the presence of the manager of the hospital at his bedside. When the manager came the decedent handed him a sealed envelope and requested that he write on it, "To be opened after my death by Cedars of Lebanon Hospital." This was done, and thereupon decedent delivered the envelope to the manager with the remark that he was leaving all of his money to the hospital. After the death of decedent the sealed envelope was opened and was found to contain a letter directed to the hospital in decedent's handwriting, written in German and signed by him under date of October 17, 1939. This letter was offered for probate as a holographic will and probated as such. As translated it is set forth in the margin.[1]

---

[1]"To the Cedars of Lebanon Hospital, Los Angeles.

"Since I am old and sick and did not see any possibility to earn money, but did not want under any circumstances to be dependent upon public charity for money, I clung tenaciously to the conservation of my small cash fund. If I did not give you the true facts as to my financial condition, I beg you to excuse this with the human weakness and fear of the future. However, when I accepted the benevolence of

On the same day that decedent entered the hospital, October 15, 1939, he told his landlord, a Mr. Cohen, that he had written a letter leaving all his belongings to the Cedars of Lebanon Hospital. Whether the letter offered for probate, which is dated October 17, 1939, was postdated or erroneously dated, or is the letter referred to, is not shown by the record. On November 15, 1939, one Sommers, an employee of a Jewish social welfare organization, visited the decedent, and according to his testimony decedent said: ''Can you get me an attorney so I can make a will leaving my property to Cedars of Lebanon Hospital. I have relatives but my relations with them are strained.'' The court refused to receive the testimony of Cohen and struck out the testimony of Sommers.

In cases of the character of the one here involved little assistance is to be derived from a consideration of the facts found in the adjudicated cases. Accordingly we shall have occasion only to state the controlling principles of law and apply them to the facts of the case before us.

█ The American and English authorities are unanimous in holding that any writing executed with the formalities required for an attested or holographic will and containing posthumous dispositions may, regardless of its form, be given effect as a will. (54 A. L. R. 918; 28 R. C. L. 113.) The fact that there are nontestamentary provisions, as here, along with those testamentary, and that the latter are a very small part of the bulk of the document, does not make such small part inoperative as a will. (*Estate of Button*, 209 Cal. 325 [287 Pac. 964] ; 1 Page on Wills, 3rd ed., § 46.) █ Moreover, while all the courts agree that the writing must be executed with *animus testandi*, there is nevertheless a difference of opinion as to the manner in which testamentary intent is or may be shown. Where a testamentary intent is clearly deducible from the writing itself and it meets the other formalities required for a will, all the authorities hold there is a presumption of testamentary intent. (1 Page on Wills, 3rd ed. §§ 50-52, 59.

---

the Ced. of Lebanon Hospital it was for me a matter of course that my property and estate should only to to the Cedars of Lebanon Hospital after my death. I hope that I will succeed, when I will come to the Hospital within the next few days, to induce you to put your attorney at my disposal to make such a last will and testament.

"The following is a statement of my estate: [Here is set forth his property in detail, together with its location.]

"2834 Somerset Dr. October 17, 1939.

                                            Leopold Pagel"

See, also, *Estate of Maloney*, 27 Cal. App. (2d) 332 [80 P. (2d) 998]—hearing denied by Supreme Court.) While the courts often say that this presumption is rebuttable, an examination of the cases will show that the presumption is rebuttable only where an issue is made that the maker was without testamentary capacity, or that the will was procured by fraud, duress or undue influence, or that it had been revoked, or when executed it was not intended to operate as a will. (Wigmore on Evidence, 3rd ed., § 2421; *Estate of Janes*, 18 Cal. (2d) 512 [116 P. (2d) 438]; *In re Siemers' Estate*, 202 Cal. 424 [261 Pac. 298]; 1 Page on Wills, 3rd ed., § 53.) ■ Moreover, if the writing is free from ambiguity on its face it may not be shown that the maker thereof intended it to operate as an instrument of a type different from that which on its face it purports to be, except in England and in a few American jurisdictions, of which California is not one. (1 Page on Wills, 3rd ed., § 59.) Where, however, a writing executed with the formalities of a will does not disclose a posthumous disposition by the very terms of the writing, parol evidence may not be received to supply the necessary *animus testandi*, either in this state (*Estate of Young*, 123 Cal. 337 [55 Pac. 1011]; *Estate of Kenyon*, 42 Cal. App. (2d) 423 [109 P. (2d) 38]) or by the great weight of authority in this country. (1 Page on Wills, 3rd ed., §§ 57, 59.) ■ But if the language of the instrument is ambiguous, so that it is not clear whether the maker *did or did not intend* the writing to operate as a will, by the great weight of American authority, as well as by English authority, extrinsic parol evidence is admissible to show the fact. (*In re Spitzer's Estate*, 196 Cal. 301 [237 Pac. 739]; 1 Page on Wills, 3rd ed., § 59.) But the type of parol evidence admissible is necessarily governed by general rules of evidence. ■ So statements of a decedent made prior to the writing relied upon as a will are admissible as an exception to the hearsay rule, as they involve a future plan or design (*In re Spitzer's Estate, supra*). But statements made after the execution of the writing relied upon are not within any recognized exception to the hearsay rule (Wigmore on Evidence, 3rd ed., §§ 1735, 1736) and so by the weight of authority are not admissible. However, some courts have evolved a special exception to the rule and so admit declarations of the maker that he has or has not made a will or one of a particular tenor. Still others hold the declarations are admissible on the theory that they

represent a state of mind, i. e., opinion or belief, and so are within that recognized exception to the hearsay rule. (Wigmore on Evidence, 3rd ed., § 1736.) In cases where the issue is forgery California follows this rule. (*Morrison's Estate,* 198 Cal. 1 [242 Pac. 939]; *Thompson's Estate,* 200 Cal. 410 [253 Pac. 697].) In that connection it should perhaps be stated that by express statute in this state (Probate Code, § 105) the oral declarations of the maker may not be received to correct an imperfect description, mistake or omission as to persons or property, or to assist in determining the application of any provisions of the will because of any uncertainty of language.

In the instant case, as has been indicated, appellant contends that decedent's declaration to Cohen, made before, and his declaration to Sommers, made after the date of the writing, should have been received to show testamentary intent. The declaration claimed to have been made to Cohen was to the effect that decedent *had made* a will in favor of the hospital. If he had done so, then it must be assumed the reference was to some instrument other than the letter, which is dated after the date of the alleged declaration. As there was no showing that the reference was to this particular letter, it seems clear that the declaration was properly excluded. With respect to the declaration alleged to have been made to Sommers after the letter was written, it is urged it was admissible on the authority of *Estate of Spitzer,* 196 Cal. 301 [237 Pac. 739], *Estate of Carson,* 184 Cal. 437 [194 Pac. 5, 17 A. L. R. 239]; *Estate of Hall,* 154 Cal. 527 [98 Pac. 269], *Sprague* v. *Walton,* 145 Cal. 228 [78 Pac. 645], and *Estate of Janes, supra.* But before we proceed to an analysis of the cases cited—none of which we feel sustains appellant—we think it important to observe that the basis (in this state as in the majority of states) for the rule excluding declarations of testamentary intent, where the will affirmatively shows such intent, is as stated by Wigmore: ". . . since the maker is deceased, and the ascertainment of his actual intent is always an elusive and jeopardous inquiry, some practical rule of thumb must if possible be adopted, taking some tangible circumstance of outward conduct as the mark of intent. . . . Given his knowledge and his ensuing act of signature, and further inquiry must cease,—subject only to those varying circumstances of fraud which may here and there arise. Such

apparently is the judicial attitude today.'' (Wigmore on Evidence, 3rd ed., § 2421.)

In view of the rule just quoted it is evident that the declaration to Sommers was inadmissible. ▮ But even if the declarations to both Cohen and Sommers had been admissible, and we hold they were not, the trial court would not have been entitled to find for the appellant. We say this because the decedent made it perfectly clear by the language used in his letter that he did not intend the letter to act as a posthumous declaration, but on the contrary stated he desired that his posthumous disposition narrated in his letter should be declared in a last will and testament. In brief, when he wrote the letter it is perfectly obvious from its language that he did not regard it in and of itself as a posthumous disposition. As it is clear that it was not written with an *animus testandi,* it did not and could not achieve that status by any subsequent act on his part short of a writing to that effect. ▮ Testamentary intent is never retroactive. It must concur with the writing, else it is of no effect. That is elemental in the laws of wills everywhere. We turn now to a discussion of the five Supreme Court decisions relied upon by appellant.

In *Estate of Hall, supra,* the instrument was in form a deed to realty, with a proviso therein to the effect that it was to remain null and void during the grantor's lifetime but to become effective upon his death. Upon the death of the grantor probate was sought of the deed on the theory that it was a will. After a holding by the Supreme Court that the deed was not a will, the grantee contended that it represented a present grant to her, subject to a life estate in the donor. On the issue thus joined it was held that the declarations of a donor of property to the effect that he had parted with the property were admissible in evidence. It is obvious that the decision is not in point here.

In *Estate of Carson, supra,* the contestants of a will contended that the decedent made her alleged husband the residuary legatee of the will in the belief that her marriage to him was valid when in fact it was not. To sustain their case in part the contestants sought to introduce declarations by the decedent bearing on this particular issue. This was denied by the trial court, which was reversed for the error by the Supreme Court. It is obvious, as the court points out, that the declarations as to her state of mind were admissible, being one of the recognized exceptions to the hearsay rule.

The court said: ''The rule is without exception, so far as occurs to us at the moment, that whenever the intention, feeling, belief, or other mental state of a person at a particular time, including his bodily feeling, *is material to an issue under trial,* evidence of such person's declarations at the time indicative of his then mental state are admissible in evidence. It is wholly immaterial whether such declarations were made in the presence of an adverse party to the litigation or not, or what the character of the litigation is. The sole tests are, is the intention, belief, or other mental state of the declarant at the time material to the issues under trial, and, does the declaration indicate what the declarant's intention, belief or other mental state at the time was. (*Estate of Arnold,* 147 Cal. 583 [82 Pac. 252] ; *Adkins* v. *Brett, ante,* p. 252 [193 Pac. 251].) Of course, if, as is frequently the case and was the case here, the declarations include or are in the form of statements as to past events, the declarations *are not competent as proof of such events,* and if that is their only bearing, they are not admissible. This was in fact the only bearing of the declarations excluded in such cases as *In re Calkins,* 112 Cal. 296 [44 Pac. 577], and *Estate of Gregory,* 133 Cal. 131 [65 Pac. 315], referred to by counsel, and those decisions go upon that ground. In the subsequent case of *Estate of Arnold, supra,* certain declarations which did not bear upon the testatrix's mental state were excluded for this reason, and others admitted which did. It is plain here that the belief of the testatrix at all times prior to her death that Carson was free to marry her and that their marriage was valid was material to the issues of the case. This being so, evidence of her declarations at any time indicating her then belief to that effect was competent and should have been admitted.'' (Italics ours.)

In *Sprague* v. *Walton, supra,* it was contended by the widow of decedent that certain executed written orders drawn by decedent in his lifetime upon his banks of deposit were gifts of the deposits to her. To sustain her contention she offered declarations of decedent made at or about the time the orders were drawn. It was held that the trial court erred in not receiving the declarations. We think it obvious that the case is not here in point.

In *Estate of Spitzer, supra,* the trial court refused probate of a letter in the handwriting of the decedent, dated and signed by him, on the ground that it failed to show on its

face that it was testamentary in character. It was held that the testimony of a brother of the decedent, with respect to declarations made to him by decedent prior to the date of the will as to his testamentary intentions, was properly admitted. The court said: "The testimony of appellant, Spitzer, was admissible as tending to show a plan or design and the prior intention of decedent. This evidence was not received as tending to supply the essential elements of a will which but faintly appear, but to show that the subject was in the mind of the testator at the time of the execution of the paper offered as a will." It was held, however, that the trial court erred in rejecting a proffer of proof by a witness who would have testified that within nine days after the will was made decedent told him that he was ill and did not expect to see the witness again—who was going for a visit in an eastern state; that he (decedent) had made his will; that he had written a letter to his brother and "that his wife would be taken care of," and that he likewise "wanted his daughter taken care of." We see nothing in this case which is of assistance to appellant. Certain general language of the opinion is not the decision. The case is not authority for a holding that all declarations made by a decedent after the execution of a document relied upon as a will are admissible.

We come then to the very recent case of *Estate of Janes, supra,* which is heavily relied upon by appellant. With respect to it appellant contends that it is authority for the proposition that in any case all declarations of a decedent during his lifetime bearing on his testamentary intent, made not only before but after the execution of his alleged will, are admissible. We do not regard the case as authority for any such principle. In that case a duly executed holographic will was offered for probate which affirmatively disclosed the requisite testamentary intent. For the purpose of showing that the decedent never intended that the particular instrument should operate as a will but that instead a duplicate should so operate and that the duplicate had been revoked, the contestant offered the declaration of the decedent as embodied in an unsigned and undated written notation. That the written notation was admissible on the issue that the particular document was never intended to operate as a will is the holding of all the authorities, as we have already pointed out by our reference to *In re Siemers' Estate, supra,* Wigmore on Evidence, 3rd ed., § 2421, and 1 Page on Wills,

3rd ed., § 53. The statement in the opinion of the Supreme Court upon which appellant relies reads: "It is not necessary, however, for the notation to be incorporated by reference since it is admissible, not as a part of the will, but upon the issue of testamentary intent." That quotation must be read in connection with its context and the issue before the court. So read it is evident that all the court intended to say was that the unsigned writing was admissible as a declaration of the decedent on the single issue that the decedent never intended the particular instrument to operate as his will. To ascribe a larger meaning to the quotation is to run counter to the reference set forth above and the court's holdings in *Estate of Button, supra, Estate of Henning,* 186 Cal. 307 [199 Pac. 39], and *Estate of Watts,* 186 Cal. 102 [198 Pac. 1036]. See also *Estate of Maloney, supra.*

Judgment affirmed.

Wood (W. J.), Acting P. J., and McComb, J., concurred.