[S. F. No. 17521. In Bank. May 21, 1948.]

Estate of WILLIAM HENRY GOLDER, Deceased. MAR-GARET B. GOLDER, Appellant, v. ALYSE V. GOL-DER, Respondent.

L. L. James and Carl E. Day for Appellant.

J. Elwood Andresen for Respondent.

GIBSON, C. J.— The sole question in this case is whether a letter written by decedent William Henry Golder to his mother, appellant herein, constitutes a valid holographic will. We are of the opinion that the judgment of the trial court refusing to admit the document to probate must be affirmed.

The letter, dated December 13, 1941, was written while Golder was stationed in New York as a member of the United States Navy and was received by his mother in California a few days later. His wife Alyse, respondent herein, and their child were then living in Philadelphia. In the letter Golder said he was "lucky" in that he would be able to be with his wife and child for Christmas. He commented on the "unsettled conditions" and stated that he was trying to persuade them to go to California to live. He told his mother that he was enclosing "for safekeeping" his bank stock, life insurance, and a letter of credit for $475 on a new automobile. The letter was signed "Your loving son, Bill."

Immediately below the signature was the following postscript: "P. S. I have a surprise coming for you and hope it works out. This is all I can tell you. *My insurance is made out to Alyse so should I get in this war and not come back I want my savings & stocks to go to you. Keep in touch with Alyse.—1516 Lehigh Ave., Phila. Pa.*"

The italicized portion of the postscript was written in pencil, whereas the body of the letter, the signature and the first two sentences of the postscript were written in pen and ink. Since the letter was received within a few days after

its date, however, it would appear that the postscript was written about the same time as the body of the letter.

Golder was sent overseas in June of 1943, approximately a year and a half after the letter was written, and was killed in action in the Pacific on August 1, 1943.

The trial court, after hearing extrinsic evidence introduced for the purpose of showing decedent's intent, found and concluded that the document "is not the last will of said decedent for the following reasons: a. The said document is wholly lacking in testamentary character. b. The said document was not intended by decedent to be his last will. c. The said document was not executed in conformity with the law, by reason of the fact that it was undated and was not subscribed or signed."

■ Assuming, without deciding, that the writing met the requirements of section 53 of the Probate Code relating to holographic wills, it must also be shown to have been executed with testamentary intent. (*Estate of Button,* 209 Cal. 325 [287 P. 964]; *Estate of Spitzer,* 196 Cal. 301 [237 P. 739].)

■ The assertedly dispositive words are found in the postscript of a letter containing many personal matters in no way connected with the testamentary disposition of property. This fact would not make the letter inoperative as a will, but it is a factor which may be considered in determining the intent of the writer if the language used does not clearly show that it was his purpose thereby to dispose of his property on his death. Language similiar to that used here has been held to be dispositive where the character of the instrument and the surrounding circumstances have indicated a testamentary intent. (*Estate of Cook,* 173 Cal. 465 [160 P. 553].) On the other hand, a letter, in which much the same language was used as that employed here, was refused probate where no extrinsic evidence was offered to show intent because, when the letter was read as a whole, it appeared "that the deceased was contemplating matrimony rather than death." (*Estate of Henning,* 186 Cal. 307, 308 [199 P. 39].)

■ When words which may be construed as testamentary are used in an informal document such as a letter, and it is not entirely clear that the writer intends thereby to control the disposition of his property at his death, the courts have been very liberal in admitting extrinsic evidence to show intent. (*Estate of Spitzer,* 196 Cal. 301 [237 P. 739]; *Clarke* v. *Ransom,* 50 Cal. 595; *Estate of Pagel,* 52 Cal.App.2d 38,

42 [125 P.2d 853] ; see *Estate of Smith, ante,* pp. 563, 568 [191 P.2d 413] ; *Estate of Janes,* 18 Cal.2d 512, 515 [116 P.2d 438].) Although the letter and the postscript in the present case apparently were written at about the same time, there is some indication that the entire postscript may not have been written at the same sitting since the first two sentences are in ink and the remainder is in pencil. It is not clear whether the "surprise" referred to in the first two sentences has any relation to Golder's expressed desire to provide for his mother which is contained in the following sentence. Nor can it be said with reasonable certainty whether the direction "Keep in touch with Alyse" indicates that the realization of the wish expressed in the preceding sentence depended upon future action. If the sentence relied on as establishing testamentary disposition stood alone, the intent would be reasonably plain, but when read in context it cannot be said to require a finding as a matter of law that Golder intended thereby to control the disposition of his property at death and that nothing further was to be done to make the expressed wish operate as a will. The trial court therefore properly admitted extrinsic evidence for the purpose of showing intent.

The letter was written within a few days after war was declared, and Golder, who had been a member of the U. S. Navy for a number of years, was subject to being sent into a combat area. The record does not disclose how long he had been married to Alyse, but in 1941 their child Margaret was at least six years of age. Although he was then stationed in New York, he visited his wife and child in Philadelphia on weekends. Golder was later transferred to California, and at his request his wife and child followed in November of 1942. They established a home in San Leandro, near where he was stationed. Some time later Golder's mother came to live with them, and the wife moved out and went to live with her sister because she could not get along with his mother. Golder was transferred back to the East coast about April, 1943. In June of that year his wife went to Nevada to establish residence for the purpose of obtaining a divorce, but what, if any, steps were taken by her do not appear. As we have seen, Golder was killed in the Pacific in August, 1943.

The estate was valued between $2,500 and $3,000 and consisted of bank stock, a savings account in the sum of $288.62, a letter of credit for $475 on the purchase of an automobile,

and some mechanic's tools. At the time the letter was written Golder had an insurance policy for $1,000 payable to his wife, or, in the event of her death, to his daughter, which was taken out in December, 1935, soon after the child was born. Sometime after the start of the war Golder took out a $9,000 policy in which his mother was named as beneficiary.

In determining whether Golder intended to make a testamentary disposition of his estate by the letter of December 13, 1941, the trial court could, and no doubt did, take into consideration the fact that no provision was made for his child or his wife, with whom he was then living on friendly terms. The savings and stocks referred to in the letter constituted substantially Golder's entire estate, and if the expressed wish of Golder were held to be testamentary, it would mean that the child was left unprovided for by the will, although she might have a claim as a pretermitted heir. In the letter he made a number of references to his child and it would seem strange that he should ignore her if he were disposing of almost everything he had. Moreover, his mother, who is claiming as the legatee, was subsequently provided for as the beneficiary of a $9,000 insurance policy. The only insurance carried for the wife or child was the policy for $1,000, the proceeds of which were given to the child pursuant to an agreement between the wife and husband.

In view of the informal character of the document, the lack of certainty in the language used when read with the letter as a whole, and the surrounding circumstances shown by the extrinsic evidence, we cannot say, as a matter of law, that the court was in error in concluding that the letter was not operative as a will.

The judgment is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.

SCHAUER, J.—I concur in the majority judgment and opinion here in accord with the same principle of appellate procedure which required my dissents in *Isenberg* v. *California Emp. Stab. Com.* (1947), 30 Cal.2d 34, 47-48 [180 P.2d 11]; *Union Oil Co.* v. *Union Sugar Co.* (1948), *ante,* pp. 300, 319, et seq. [188 P.2d 470]; *Estate of Smith* (1948), *ante,* pp. 563, 569-572 [191 P.2d 413]; *Adoption of Parker* (1948), *ante,* pp. 608, 617-619 [191 P.2d 420]. To record

continuity of reference and consistency of position it seems proper to point out that the majority opinion here, in the rule it applies, is consistent with the dissents and inconsistent with the majority opinions in the cases cited.

Appellant's petition for a rehearing was denied June 10, 1948.