87 Cal.App.2d 591 (1948)
Estate of CARRIE BELLE SPENCER, Deceased. RAYMOND B. JOHNSON, as Public Administrator, etc., et al., Appellants,
v.
MORTIMER B. VEALE, Respondent.
Civ. No. 13692. 
California Court of Appeals. First Dist., Div. Two. 
Sept. 17, 1948.
 Yates F. Hamm, Matthew Ward and Marcel E. Cerf, Robinson & Leland for Appellants.
 Carlson, Collins & Gordon, Robert Collins and Frederick Bold, Jr., for Respondent.
 GOODELL, J.
 This appeal was taken from an order which revoked an order admitting to probate as decedent's last will a letter written, dated and signed by her reading as follows:
 "May 19th, 1936"
 121, Cromwell Road,
 S.W. 7.
 Dear Mr. Thomas Milan:
 Thank you for your kind letter and the cheque. I do not think it is quite fair to you.
 However the building & lot will be turned over to you one day--for I haven't any relations that would be bothered with them--as they have all they want or need so please accept them.
 We are moving to a smaller flat this week & it is very much better for me for there are no elevators here, & there are 4 here in the new one.
 I have had to be carried up & down the stairs when I was obliged to go out on business--ever since before Xmas.
 Two men, with a carrying chair--so I have been out very little & I am delighted to move.""
 The sole question presented for decision is whether this letter constitutes a valid holographic will.
 [1] It is well settled that "No particular words are necessary to show a testamentary intent but it must satisfactorily appear from the document offered ... that the decedent intended by the very paper itself, to make a disposition of his property after his death in favor of the party claiming thereunder." (Estate of Wunderle, 30 Cal.2d 274, 280, 281 [181 P.2d 874].)
 [2] The letter in question discusses matters in no way connected with the testamentary disposition of property, namely, the receipt of a remittance and the moving by decedent from one home to another. It does not contain any farewell messages or directions such as are frequently found in letters offered for probate (e. g., Estate of Button, 209 Cal. 325 [287 *594 P. 964]; Estate of Cook, 173 Cal. 465 [160 P. 553]). The fact that unrelated matters are discussed "would not make the letter inoperative as a will, but it is a factor which may be considered in determining the intent of the writer if the language used does not clearly show that it was his purpose thereby to dispose of his property on his death." (Estate of Golder, 31 Cal.2d 848, 850 [193 P.2d 465].)
 [3] The part of the letter which appellant claims is testamentary reads: "However the building & lot will be turned over to you one day--for I haven't any relations that would be bothered with them--as they have all they want or need so please accept them." In our opinion this language does not clearly show a testamentary intent or purpose. The words are susceptible of three meanings other than the one for which appellant contends, namely, (1st) that "the building & lot will be turned over to you one day" when I make a deed to you, or a will naming you as devisee; (2nd) that I have already made a deed which I will turn over to you one day in the future, and, (3rd) that I have already made a will in your favor and one day, when I die, the property will be turned over to you.
 In Estate of Richardson, 94 Cal. 63 [29 P. 484, 15 L.R.A. 635], the language of the letter was "You and your children get everything." The court said (p. 65), "The last expression might be used in a letter like this by one who had already made a formal will, which may have been lost or destroyed, or might be with reference to making a formal will; that is, 'you and your children get everything by a formal will,' or 'will get everything by a will I shall make.' This construction of the language is as consistent with a proper interpretation of it as is that contended for by the appellants. It is not for courts to declare that to be a testamentary disposition of his estate when it does not clearly appear that such was the intention of the individual executing it." Other cases where the language did not clearly or definitely show a testamentary intent and purpose, are Estate of Meade, 118 Cal. 428, 431 [50 P. 541, 62 Am.St.Rep. 244]; Estate of Branick, 172 Cal. 482, 484 [157 P. 238]; Estate of Kelleher, 202 Cal. 124, 129 [259 P. 437, 54 A.L.R. 913]; Estate of Anthony, 21 Cal.App. 157 [131 P. 96].
 The last four words of the paragraph here in question, "so please accept them" simply take their color and meaning from the earlier language. *595
 In the Golder case, 31 Cal.2d 848, supra (decided since the briefs were filed herein) a letter dated December 13, 1941, from the decedent, a sailor in the Navy, to his mother, contained the following postscript: "P. S. I have a surprise coming for you and hope it works out. This is all I can tell you. My insurance is made out to Alyse so should I get in this war and not come back I want my savings & stocks to go to you ..."
 The court held that this language was not testamentary and in the course of the opinion said: "Language similar to that used here has been held to be dispositive where the character of the instrument and the surrounding circumstances have indicated a testamentary intent. (Estate of Cook, 173 Cal. 465 [160 P. 553].)" And later: "When words which may be construed as testamentary are used in an informal document such as a letter, and it is not entirely clear that the writer intends thereby to control the disposition of his property at his death, the courts have been very liberal in admitting extrinsic evidence to show intent." Estate of Cook, which the court cites, is illustrative of this rule for there the three letters held to be testamentary were written the day before the testatrix entered a hospital for an operation after suffering for 15 or 20 years from a malignant disease, and "she had reason to believe she might not live through it." She died about a month later.
 In Mrs. Spencer's letter she expressed pleasure at the prospect of getting away from an up-and-down-stairs problem but there is no evidence to show how such problem arose. Nor is there anything in the letter, or extrinsic to it, to show that she was at all apprehensive as to her health. Moreover she did not die until nearly five years later.
 In each of the letters admitted as wills in the cases relied on by appellant an entirely different picture was presented.
 In Clarke v. Ransom, 50 Cal. 595, the letter was written by the testatrix "under the belief that her death was near at hand, as in fact it was" for she died nine days later. The language she used was: "Dear Old Nance: I wish to give you my watch, two shawls, and also five thousand dollars."
 In Mitchell v. Donohue, 100 Cal. 202 [34 P. 614, 38 Am.St.Rep. 279], the testator, who was suffering from an abscess in his back, wrote the following letter: "this is to serify that ie levet to mey wife Real and persnal and she to dispose for them as she wis" and handed it to his wife, saying: "That's *596 for you, for fear anything should happen ..." He died 16 days later.
 In Estate of Dexter, 179 Cal. 247 [176 P. 168], the letter read "I have stated to you before that I wish you to administer on my estate, when it has to be. So will put it in writing. Distributed equally among my nieces and nephews. You receive your pay besides out of the estate." This paper was an addendum to a note written the day before in which the testatrix said, inter alia, "if anything happens to me while I am away." The court said: "That she understood the importance and character of the writing is apparent from the fact that in the letter of transmittal she impressed upon Wright the importance of keeping it in some safe depository."
 In Estate of Spitzer, 196 Cal. 301 [237 P. 739], the letter was written when the testator was in extremis (see Estate of Kelleher, 202 Cal. 124, 128 [259 P. 437, 54 A.L.R. 913]) and he died about seven weeks later. After describing certain dispositions which he had already made, the testator said "Bal of estate to go to Lulu M. Plane."
 In Estate of Button, 209 Cal. 325 [287 P. 964], the letter showed that the testatrix intended to take her own life. She did so on the same day. The testamentary language was: "You can have the house on 26th. ave. and all the things of value so you won't be out any money on burying me."
 In Estate of Beffa, 54 Cal.App. 186 [201 P. 616], the letter likewise was written on the day of the testator's suicide. The testamentary language was: "I sign and trasfer ..."
 In Estate of Miller, 128 Cal.App. 176 [17 P.2d 181], the letter was written "with a consciousness of approaching dissolution," about five weeks before death. The testamentary language was "All bank accounts or any and all property real and personal belonging to me will be given to Minnie Miller."
 In Estate of Beaty, 27 Cal.App.2d 745 [81 P.2d 1002] the document read: "I was sick all night ... If I should pass out ... Keep the Home and all of you live here do not give away my things that I have had so long." It also contained directions as to burial.
 In Milam v. Stanley, 33 Ky. Law Rep. 783 [111 S.W. 296, 17 L.R.A.N.S. 1126], the testator three days before he was to be hanged wrote his daughters: "I guess my last hope is gone ... I want to make you and Lula a deed to that house and lot." The court said that the testator "knew when he wrote this paper that he was to die on February 15th ... He did *597 not have in mind that he was thereafter to make his daughters a deed to the house and lot ... These words show that he had in mind not something that he was going to do, but something he was then doing." The court cited Clarke v. Ransom, 50 Cal. 595, supra, on the point that the letter was "written in expectation of death."
 In Buffington v. Thomas, 84 Miss. 157 [36 So. 1039, 105 Am.St. Rep. 423], the letter, written by an invalid, said "This leaves me in bed with high fever. I do not know whether I shall live to see morning ... Eliza has did what she could for me and I want her to have our home in Yazoo City ..." In the Spitzer case, 196 Cal. 301, 307, supra, the court cites the Buffington case, on the proposition that the testator's "anticipation of death would be a sufficient reason to prompt him to make his will."
 In each of the foregoing cases cited by appellant the language of the writing is much stronger than that employed by Mrs. Spencer. In each of them (with the possible exception of Dexter's Estate) the evidence showed, also, the testator's consciousness or apprehensiveness of imminent death. For these reasons none of them has persuasive value in this case.
 In In re Spratt, 75 L.T.N.S. 518, the court conceded that the document was a will, and then added that the only question was whether it was conditional.
 That the existence or nonexistence of apprehensiveness of imminent death is an important factor in determining whether there is testamentary intent, is accentuated in the Richardson case, 94 Cal. 63, 65 [29 P. 484, 15 L.R.A. 635], where the court said: "He was not in extremis, nor is there anything to show that he contemplated immediate or very proximate dissolution, which might necessitate a final disposition of his estate"; likewise in the Henning case, 186 Cal. 307 [199 P. 39] where the court said that "From the whole letter ... it is evident that the deceased was contemplating matrimony rather than death."
 The court was liberal in admitting extrinsic evidence in this case, but such evidence did not embrace the circumstances attending the writing of the letter of May 19, 1936. The testamentary intent, or lack thereof, must therefore be judged by the language of the letter itself, and, as we have said, it does not clearly show such intent or purpose. Appellant's case is not aided to any appreciable extent by the extrinsic evidence which was admitted. The utmost it shows is that he had been *598 a tenant of the property in question since 1914, and for almost 10 years before decedent's death in 1941 he had been her agent in the handling of her interests. Also, that he had made extensive repairs and improvements to the property at his own expense. It shows that decedent was deeply grateful to appellant and that he and she were close friends. It shows that in 1932, on one of decedent's visits she told appellant "This building is going to be yours" and that on August 19, 1937, she wrote him from London "I am glad you have done something for the old building for I couldn't do it, and you will have to take it out in waiting for the real ownership to you," a statement entirely consistent with what she wrote on May 19, 1936, that "the building & lot will be turned over to you one day." All in all, the extrinsic evidence does not go any further than to show the decedent's reasons and motives for either deeding or devising the property to appellant "one day." It in no way aids in the inquiry into what was in her mind when she wrote the letter.
 Both sides agree that Mrs. Spencer was an educated woman and a good business woman. On August 19, 1927, she executed a formal will, with her solicitor and one of his clerks as witnesses. It may safely be said, then, as was said in Estate of Branick, 172 Cal. 482, 484 [157 P. 238], "It is quite clear that the testator understood the nature and requirements of a will." [4] Moreover the existence of the formal will of 1927 would seem to bring the case within the rule of White v. Deering, 38 Cal.App. 433, 437 [177 P. 516], that "where there exists a previously made and unrevoked will of the testator, such instrument [the informal writing] should be so phrased that there can be no doubt from its language that the intention of the testator was thus to make further testamentary provisions regarding the disposal of his estate ..." See, also, Estate of Logan, 29 Cal.App.2d 60, 64 [84 P.2d 245]. This might well have weighed with the trial judge in holding that the letter was not testamentary in character.
 [5] The court found that the letter of May 19, 1936, "is not a last will or testament ... that the decedent did not express in said letter any testamentary intent or intend thereby to make any testamentary disposition of her property ..." Appellant claims that the court failed to find on material issues. It is difficult to understand this attack, for the finding is upon the ultimate fact in issue (Estate of Janes, 18 Cal.2d 512, 514 [116 P.2d 438]) and is therefore sufficient. *599
 [6] The motion for a new trial was properly denied. Appellant testified that in 1932 on one of decedent's visits to Antioch she said to him "in the presence of her husband and another man by the name of Chris Bogan who was working there ... I don't know if he heard it or not, ... as long as that I have been good tenant to her and been taking good care of her property and she is not going to forget me when she died. She said that much, and she says, 'This building is going to be your' and words to that effect ... I don't remember the exact words." (Emphasis added.) In attempting to make a showing of newly discovered evidence affidavits were filed to the effect that the man referred to did overhear the conversation. From appellant's own testimony just quoted it clearly appears that there was nothing newly discovered about it. Moreover, there was no showing that the testimony of the Bogdans was not available at the time of the trial (see 20 Cal.Jur. pp. 78-79) and at best it would be but corroborative and cumulative and could not have brought about a different result. (See 20 Cal.Jur. pp. 94-95.)
 Our conclusion that the letter of May 19, 1936, does not constitute a valid holograph will disposes of appellant's contention that that letter "acted as a revocation of the former or attested will."
 [7] The formal, witnessed document dated August 19, 1927, was offered for probate on June 12, 1946, at the same time that the petition for revocation of the order admitting the letter of May 19, 1936, was filed. On August 26, 1946, an order was made admitting to probate the 1927 document, notwithstanding the letter of May 19, 1936, had been already admitted and the petition for revocation had not been disposed of. Appellant now attempts to raise this point, but he is not in a position to successfully do so since no appeal was taken from the order of August 26, 1946, until September 22, 1947, long after the time to appeal had expired. Furthermore, when the issues raised by the petition to revoke and the answer thereto came to trial on December 9, 1946, both sides went to trial on these issues without presenting the point now raised. It is from the order entered on the findings made on that trial that this appeal was taken.
 The order appealed from is affirmed.
 Nourse, P. J., concurred.