[Civ. No. 24864. Second Dist., Div. Two. Feb. 15, 1961.]

Estate of MERCEDES L. GUTIERREZ, Deceased. ANTHONY L. VILLA et al., Respondents, v. STATE OF CALIFORNIA, Appellant.

Stanley Mosk, Attorney General, and Carl Boronkay, Deputy Attorney General, for Appellant.

Price, Postel & Parma, Harold A. Parma, H. Clarke Gaines and Lilian M. Fish for Respondents.

ASHBURN, J.—The attorney general[1] appeals from judgment denying probate of a holographic document reading as follows: "For Maurice Gutierrez. In case that I should have an illness, or my death, I want my husband (Maurice A. Gutierrez) to have some ready money—so am enclosing two cheques. One to the Bank of Arizona, Prescott, Arizona (saving department, am also enclosing book—in this letter for $35,000. The other cheque to the United States Trust Company of New York, 45 Wall Street, New York—N.Y. for $9,000—He is to have his share of my estate, which is taken care of by the United States Trust Company of New York, 45 Wall Street—New York—N.Y. and the rest to different charities. signed MERCEDES L. GUTIERREZ January 13—1955."

The ruling rests upon the ultimate finding that the document was not testamentary in character and not intended to be so. The contestants-respondents are nieces and a nephew of decedent, her nearest surviving kindred.

The question of the testamentary character of the proffered document is to be determined from the face of the instrument in the light of surrounding circumstances. Parol evidence of the author's intention in this regard was admissible and must be considered. (*Estate of Sargavak*, 35 Cal.2d 93, 95 [216 P.2d 850, 21 A.L.R.2d 307].) The phrase "testamentary intent" means merely that "The testator must have intended, by the particular instrument offered for probate, to make a revocable disposition of his property to take effect upon his death." (*Estate of Sargavak, supra*, 35 Cal.2d 93, 95.) "No particular words are necessary to show a testamentary intent. It must appear only that the maker intended by it to dispose of property after his death, and parol evidence as to the attending circumstances is admissible." (*Mitchell* v. *Donohue*, 100 Cal. 202, 208 [34 P. 614, 38 Am.St.Rep. 279].) "Where a testamentary intent is clearly deducible from the writing itself and it meets the other formalities required for a will, all the authorities hold there is a presumption of testamentary intent. (1 Page on Wills, 3d ed., §§ 50-52, 59. See also

[1] "He, acting for the state as *parens patriae*, had a right and a duty to participate and protect this gift to charity." (*Estate of Quinn*, 156 Cal.App.2d 684, 690 [320 P.2d 219].)

*Estate of Maloney,* 27 Cal.App.2d 332 [80 P.2d 998]—hearing denied by Supreme Court.)'' (*Estate of Pagel,* 52 Cal.App. 2d 38, 41 [125 P.2d 853].) It is not necessary that the testatrix use the word ''will'' or that she actually realize that her document constitutes a will as a matter of law. (*Estate of Button,* 209 Cal. 325, 330-331 [287 P. 964]; *Estate of Spitzer,* 196 Cal. 301, 307 [237 P. 739].) Thus the use of the word ''letter'' in this document is of little significance for it was not in the form of a letter and did make provision for disposition of property upon death. The face of this writing seems free from ambiguity and leaves no room for substantial doubt of the writer's testamentary intention.

 It plainly has a dual purpose. The husband of 29 years had no property of his own, no business experience and no bank account. Mrs. Gutierrez wanted to protect him and herself against the delays and inconveniences due to any serious illness that might come upon her. Next she wished to save him from embarrassments due to inability to command or attempts to provide, ready money for the husband in ready money in case of her death. So the will provides, case of her illness or death, a total of $44,000. Whether either aspect of that attempt would be valid is of no consequence at this stage of the case; the only question being whether the document is entitled to probate.

''It bears emphasis that we are here concerned not with the meaning of the instrument, but with the intention with which it was executed.'' (*Estate of Sargavak, supra,* 35 Cal. 2d 93, 96.) ''It is also well to bear in mind the fact that the search for a testatrix' intention does not involve a determination that she understood the legal effect of the directions found to have been expressed by her in the will. The effect of what she had provided is governed by substantive law. If she makes a bequest which violates the rule against perpetuities [citation] or attempts to immunize a trust beneficiary's income from claims of his creditors to an extent not recognized by statute [citation] or to defeat the claim of the Alien Property Custodian to a future interest [citation], that intention, though plainly shown, cannot prevail.'' (*Estate of Kuttler,* 160 Cal.App.2d 332, 335 [325 P.2d 624].) See also *Estate of Kuttler,* 185 Cal.App.2d 189, 198-199 [8 Cal. Rptr. 160]; *Estate of Montgomery,* 89 Cal.App.2d 664, 667 [201 P.2d 569]; 57 American Jurisprudence, section 1134, page 729.

The fact that provisions relating to illness are included in the instrument cannot defeat a testamentary intent which also affirmatively appears in the document. (*Estate of Sargavak, supra,* 35 Cal.2d 93, 101; *Estate of Button, supra,* 209 Cal. 325, 331; *Estate of Pagel, supra,* 52 Cal.App.2d 38, 41.)

As we have said, the instrument undoubtedly had a dual purpose—to supply the husband with ready money in case of Mrs. Gutierrez' serious illness or in case of her death. Having covered the matter of "ready money" for her husband, Mrs. Gutierrez then turned unmistakably to testamentary dispositions. "The opening words of the contested letter, to wit, 'In case of my death,' indicate clearly that the decedent intended thereby to direct the distribution of his estate in the event of his death. That phrase dramatically expresses the contingency upon which the gift is to take effect." (*Estate of Spies,* 86 Cal.App.2d 87, 90 [194 P.2d 83].) See also *Estate of Del Val,* 159 Cal.App.2d 600, 604 [323 P.2d 1011].

"He is to have his share of my estate, which is taken care of by the United States Trust Company." This doubtless refers to a trust that Mrs. Gutierrez had established with said trust company, which trust provides: "The trust estate, together with all accrued but uncollected income thereon, shall upon the death of the Grantor, forthwith be transferred and paid to such person or persons in trust or otherwise as the Grantor may by a duly executed and proved last will and testament direct and appoint; and in the absence of such direction or appointment, then to the persons entitled thereto under the laws of succession of the state in which she resides at the time of her death in the proportions therein specified." "[H]is share of my estate" undoubtedly means that the husband is to take, by virtue of the holographic instrument, the same share of the trust estate as he would take if she made no will; also that the rest shall go to others. To whom? "[T]o different charities."

The question of identity of the charities or the validity of a bequest in this language does not arise upon petition for probate. *Estate of Cook,* 173 Cal. 465, 468 [160 P. 553]: "The only question before the superior court on a petition for the probate of one or several writings claimed to constitute a will is, does it or they constitute the will of the deceased—is a testamentary disposition of property intended and disclosed by the writings? The court is limited solely to

that inquiry. In determining whether an instrument proffered for probate is, or is not, a will, the court cannot ordinarily enter into any consideration of the construction of the will; resolve inconsistencies in the disposition of property or construe the provisions of the instrument. These are matters which may properly arise only after the probate of the will.''

 *Estate of Plaut,* 27 Cal.2d 424, 427 [164 P.2d 765, 162 A.L.R. 837] : ''Upon the contest of a will, whether before or after probate, the court will ordinarily not construe the instrument. [Citations.] The only issue before the court is whether the instrument contested is or is not the will of the testator, and the power to construe will be exercised only insofar as it is necessary to the determination of that issue. [Citations.] If this court were now to pass upon the validity of the trust, it would be passing upon an issue that ordinarily cannot be raised until a later stage in the administration of the estate.''

Parenthetically it may be observed that the vagueness of this charitable gift does not defeat it as it would in the case of a private trust. See *Estate of De Mars,* 20 Cal.App.2d 514, 516 [67 P.2d 374] ; *People* v. *Cogswell,* 113 Cal. 129, 136-137 [45 P. 270, 35 L.R.A. 269] ; *Estate of Bunn,* 33 Cal.2d 897, 904 [206 P.2d 635].

 Respondents contend that the question of intent is a factual one and that the court's ruling must be upheld upon the basis of substantial conflicting evidence. In its essence this argument amounts to a claim that the above mentioned presumption of testamentary intent was overcome by the extrinsic evidence.

That proof consists of the following facts, or alleged facts. The Gutierrezes were married in 1926. Prior to October 2, 1950, Mrs. Gutierrez had several trusts with the United States Trust Company of New York; she consolidated her trusts into the one bearing that date and received in evidence below. It provides for her support during the balance of her life and contains the remainder provision above quoted. Before that time, on one occasion between 1937 and 1949, she had avoided seeing a New York attorney who was sent to her by a Santa Monica trust company because she knew he was there to draw a will for her. Though an intelligent and cultured woman, she was superstitious about making a will. But, as above shown, she later made a trust in October 1950, which expressly contemplated a last will and testament as one method

of disposition of the remainder of the trust estate. At the time she made the holographic document on January 13, 1955, she was residing for about three months in Reno, Nevada, because of her health; she had several years previously had a diagnosis of an "affected lower lobe of the left lung." Her condition was not very good. Apparently referring to the time of making the will her husband testified that "she seemed to be very frightened by that time, I remember. I don't know what date that was." The document was entirely in her own handwriting and was found in a drawer of a desk in the bedroom of her Santa Barbara home a few days after her death, which occurred on May 29, 1958. In that drawer were her check book, paid and unpaid bills, letters and miscellaneous papers; also the deed to her Prescott home which had been sold, and some other papers that Mr. Gutierrez thought were valuable. The writing was enclosed in an envelope upon which Mrs. Gutierrez had written "For Maurice Gutierrez." It also contained the two checks mentioned in the document, but no bank book. She had never mentioned this document to her husband nor discussed with him the making of a will or any financial matters. Her sister, Mrs. Villa, predeceased her leaving her children, the contestants, as Mrs. Gutierrez' next of kin. Though letters to Mr. Villa, who advised her about business matters and handled her finances, evidenced affection for the sister, and though she frequently spoke of the sister and her children with apparent friendliness and had their photographs in her home, she never mentioned to her husband the thought of leaving any of them anything by will. These relatives lived in the East and she visited them but once, in 1952. Upon her return she told her husband, "I am so glad to get away from them." Before her marriage she had told him that "she never got along with them"; that "her sister was all for society, and tried to drag her into artificial society, which she didn't like. . . . she was always criticizing my wife, so that is one reason they didn't get along." Over 32 years of marriage decedent had donated funds to different charities and had expressed her interest in charities. Her husband never accumulated any property of his own; she had created a joint tenancy with him in a home and a bank account; he had no individual bank account and at the time of her death did not know how to write a check. About three months before her demise Mrs. Gutierrez told him he was well taken care of, but she did not mention the holographic document; her estate, separate per-

sonal property, was appraised at $79,342.61. On cross-examination Mr. Gutierrez denied that he told counsel for contestants that his wife wrote this document because she had trouble with her eyes, hardly could read, and that that was when she wrote the document. However, his deposition said: "The reason my wife wrote that out, I am quite sure, is because she had trouble with her eyes at one time. She could hardly read, so then she became worried; so, that is when I think she wrote that will out, that document." The Prescott bank account had been transferred to a Santa Barbara bank and the account in the United States Trust Company had less than $9,000 in it, about $7,000, at the time of Mrs. Gutierrez' death.

Confronted as respondents are with a presumption of testamentary intent arising from the face of the instrument, they cannot prevail upon any theory that it has been overthrown by the foregoing extrinsic evidence, or that that evidence constitutes proof of a nature sufficient to establish substantial conflict.

In the first place the oral evidence does not show or tend to show directly that Mrs. Gutierrez intended that the instrument should not dispose of her property upon her death—should not be a will. It merely raises possibilities or speculation that such was her intent. ▮▮▮ An inference cannot be based upon mere possibility. (*Eramdjian* v. *Interstate Bakery Corp.*, 153 Cal.App.2d 590, 602 [315 P.2d 19]; *Estate of Braycovich*, 153 Cal.App.2d 505, 512 [314 P.2d 767]; *Lyders* v. *Wilsey*, 94 Cal.App. 493, 496 [271 P. 383]; *Estate of Teed*, 112 Cal.App.2d 638, 643-644 [247 P.2d 54]; *Brocato* v. *Standard Oil Co.*, 164 Cal.App.2d 749, 758 [331 P.2d 111]; *Marshall* v. *Parkes*, 181 Cal.App.2d 650, 655 [5 Cal.Rptr. 657]; 4 Cal.Jur.2d, § 609, p. 491.)

▮▮▮ The Eramdjian case, *supra*, at page 602, says: "A legal inference cannot flow from the nonexistence of a fact; it can be drawn only from a fact actually established. (Code Civ. Proc., §§ 1958, 1960.) ▮▮▮ It is axiomatic that 'an inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guesswork.' (18 Cal.Jur.2d 480.) Yet that is exactly what appellants are attempting to do."

*Reese* v. *Smith*, 9 Cal.2d 324, 328 [70 P.2d 933]: " 'If the existence of an essential fact upon which a party relies is left in doubt or uncertainty, the party upon whom the burden rests to establish that fact should suffer, and not his adver-

sary. (*Patterson* v. *San Francisco etc. Ry. Co.*, 147 Cal. 178 [81 P. 531].) A judgment cannot be based on guesses or conjectures. (*Puckhaber* v. *Southern Pac. Co.*, 132 Cal. 363 [64 P. 480].) And, also, "A finding of fact must be an inference drawn from evidence rather than on a mere speculation as to probabilities without evidence. A majority of chances never can suffice alone to establish a proposition of fact, since the slightest real evidence would outweigh all contrary probabilities." (23 Cor. Jur., § 1750, p. 18.)' "

What constitutes substantial evidence, as distinguished from mere possibility or speculation, is clarified in the following passage from *Estate of Teed, supra,* 112 Cal. App.2d 638, 644: "The sum total of the above definitions is that, if the word 'substantial' means anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with 'any' evidence. It must be reasonable in nature, credible, and of solid value; it must actually be 'substantial' proof of the essentials which the law requires in a particular case."

*Fewel & Dawes, Inc.* v. *Pratt,* 17 Cal.2d 85, 89 [109 P.2d 650] : "If, however, the evidence is so slight and tenuous that it does not create a real and substantial conflict the finding may be set aside. (*Ibid.*) 'There must be more than a conflict of words to constitute a conflict of evidence. The contrary evidence must be of a substantial character, such as reasonably supports the judgment. . . .' "

Moreover, this evidence cannot operate to dispel the presumption arising from the face of the will. Even if the testamentary intent there manifested were to be deemed an inference rather than a presumption the oral evidence under discussion would not be sufficient to overthrow it. *Leonard* v. *Watsonville Community Hospital,* 47 Cal.2d 509, 515 [305 P.2d 36] : "It is settled that where the evidence raises an inference that a fact exists, and either party produces evidence of the nonexistence of the fact that is clear, positive, uncontradicted and of such a nature that it cannot rationally be disbelieved, the nonexistence of the fact is established as a matter of law." At page 517: "Cases involving the use of evidence adduced under [Code Civ. Proc.] section 2055 to dispel a *presumption* must be distinguished from those involving *inferences.* Generally speaking, it may be said that a presumption is dispelled as a matter of law only when a fact which is wholly irreconcilable with it is proved by the

uncontradicted testimony of the *party relying on it or of such party's own witnesses."*

■ The briefs refer to the fact that the two checks and the bank book mentioned in the holographic document were not entirely in the handwriting of the testatrix and the matter is treated as if a question of incorporation by reference were involved. Not so. The will itself describes the checks and bank book but does not attempt to make them operate as a part of the will, merely a means of carrying out its provisions. They are given to the husband in just the same way as a piece of particularly described realty would be bequeathed. (*Cf.* 57 Am.Jur. § 239, p. 197; 94 C.J.S. § 163, p. 954.) ■ An ineffective attempt to incorporate another document does not destroy a will. (94 C.J.S. § 163, p. 956.) ■ Finally, it is the law of California that a holographic will may properly incorporate another document which is not holographic. (*Estate of Martin,* 31 Cal.App.2d 501, 507 [88 P.2d 234] ; *Estate of Dobrzensky,* 105 Cal.App.2d 134, 141 [232 P.2d 886] ; *Estate of Plumel,* 151 Cal. 77, 79, 80 [90 P. 192, 121 Am.St.Rep. 100] ; *In re Soher,* 78 Cal. 477, 480-481 [21 P. 8] ; *Estate of Atkinson,* 110 Cal.App. 499, 502 [294 P. 425] ; *Estate of Golder,* 31 Cal.2d 848, 850 [193 P.2d 465].)

The judgment is reversed with instructions to the lower court to take such further proceedings as may be not inconsistent with the views herein expressed.

Fox, P. J., and McMurray, J. pro tem.,* concurred.

A petition for a rehearing was denied March 7, 1961, and respondents' petition for a hearing by the Supreme Court was denied April 12, 1961.

*Assigned by Chairman of Judicial Council.