Tono L. HOOKER and J. D. Hooker, Plaintiffs In Error,

v.

Ralph BARTON, Charlie Barton, Mary A. Barton, Jewell Barton Jones, Vern Barton, Kelly Barton, Chandos A. Hoskyns, Donna Hoskyns Dawson, and Ralph Barton and Mary A. Barton, guardian of Ella Barton Eddy, an Incompetent, Defendants in Error.

No. 36241.

Supreme Court of Oklahoma.

March 22, 1955.

Rehearing Denied June 7, 1955.

G. C. Spillers and G. C. Spillers, Jr., Tulsa, for plaintiffs in error.

Manatt, Knight & Knight, Lewis C. Johnson, Felix Bodovitz, and Milsten, Milsten, Johnston & Morehead, Tulsa, for defendants in error.

WILLIAMS, Vice Chief Justice.

This appeal involves a will contest and is from a judgment of the District Court of Tulsa County affirming a judgment of the

county court of Tulsa County, denying probate of a holographic instrument propounded as the last will and testament of Flora B. Barton, Deceased, Plaintiffs in Error, J. D. Hooker and Tono L. Hooker, the only two sons of Lucy H. Hooker, deceased, who was a sister of Flora B. Barton, deceased, are the proponents and will be so referred to herein. Defendants in error are the special administrators of the estate of Flora B. Barton, deceased, and other heirs at law of said decedent, and will be hereinafter referred to as contestants.

Flora B. Barton died March 12, 1950. Another instrument, not here involved, was offered for probate by proponents as the last will and testament of Flora B. Barton, deceased, but probate thereof was denied by the county court on April 5, 1950, and no appeal was taken therefrom.

In April or May of 1950, Tono L. Hooker discovered the instrument now propounded for probate in a dresser drawer in what had been his mother's bedroom in the Barton homestead where both she and Miss Barton had lived during their lifetime. This instrument, which was wholly in the handwriting of Miss Barton, was, as originally written, as follows:

"Oct. 25/33

"To whom this may concern:
"Should anything happen to me that I should be incapable of handling my business or in case of death the contents of this box are to be turned over to my mother, Mrs. Mary J. Barton, or my sister, Mrs. Lucy Hooker.

"Flora B. Barton.

"Contents
deeds, etc.,
Bill of sale Household goods
Letters from Drs. to mother
$809.00 postal savings."

The instrument had originally been written in ink, and was subsequently altered in pencil so that as altered it is as follows:

"Oct. 25/33

"To whom this may concern:
"Should anything happen to me that I should be incapable of handling my business or in case of death the contents

of this box are to be turned over to
Mch. 28/40—mother is now deceased
my ~~mother, Mrs. Mary J. Barton, or~~ my sister, Mrs. Lucky Hooker, and all real & personal property.
"Flora B. Barton.

"Contents
deeds, etc.
Bill of Sale Household goods
Letters from Drs. to mother
$809.00 postal savings."

Upon discovering this instrument, proponents took it to their attorneys, but it was not offered for probate until March 10, 1952.

Both the County Court and the District Court denied probate of the instrument offered. The District Court found that the instrument as originally executed was "not intended as a will but was a memorandum of instruments as to what was to happen to the contents of a certain box, which box and contents are no longer capable of being identified"; that such instrument before its amendment was indefinite and uncertain and lacked testamentary intent; that Flora B. Barton did not re-sign or re-execute the instrument at any time after originally signing it on October 25, 1933, and that even if the amendments made to the instrument on March 28, 1940 were sufficient to supply the necessary testamentary intent and definiteness, which the court did not decide, the instrument failed as a will because of the failure of Miss Barton to re-execute or re-sign the same after making such amendments.

The only issue presented by this appeal is whether or not the instrument in question was in fact and in law a will.

In support of their contention that the instrument in question was the last will and testament of Flora B. Barton, deceased, and should be admitted to probate, proponents argue that the instrument clearly discloses testamentary intent and is a valid holographic will; that a validly executed will remains in force and effect until revoked as required by law; that an instrument may serve in a dual capacity both as an instrument effective inter vivos, as well as a will; and that it was not necessary for Miss Barton to re-sign the will after it was altered by her in her own handwriting.

Proponents' argument that the instrument in question discloses testamentary intent is directed solely to the instrument as altered and is based almost completely upon the words added to the instrument by the alteration.

Both the county court and the district court found that the instrument in question as originally written was not intended as a will but was merely a memorandum pertaining to instruments contained in a certain box no longer identifiable, that it was indefinite and uncertain and lacked testamentary intent. Although proponents excepted to such finding, they submit nothing in their argument demonstrating the incorrectness of such finding, and we are convinced that it is correct. We have long been committed to the rule that where an instrument is tendered for probate as an holographic will, it must be plainly apparent that it was the intention of the deceased that the paper should stand for her last will and testament, and an instrument should be denied probate unless such intention is plainly apparent. Craig v. McVey, 200 Okl. 434, 195 P.2d 753; Elrod v. Purdin, 196 Okl. 120, 163 P.2d 209. In re Young's Estate, 95 Okl. 205, 219 P. 100. No such intention is apparent in connection with the instrument in question as originally executed.

Proponents argue, however, that the instrument as altered discloses testamentary intent and is a valid holographic will. If this be true, since the instrument as originally executed was not a will, when did it become a will? Testamentary intent is never retroactive. It must concur with the writing, else it is of no effect. In re Pagel's Estate, 52 Cal.App.2d 38, 125 P.2d 853. Since the instrument in question was not originally written with a testamentary intent, it did not and could not achieve that status by any act on the part of the decedent short of a writing to that effect. So far as the record in this case reveals, however, the only thing that happened to affect the instrument in question after its original execution was the act of the decedent in drawing a line through one of the names in the instrument and adding the words "and all real & personal property" at the end thereof. It therefore appears that the real question in this case is whether an holographic instrument which was not a will and was not executed with any testamentary intent can be converted into a will by the maker thereof by simply writing the words "and all real & personal property" at the end thereof, without more. Although we are able to find no exact precedent to guide us, we are convinced that the answer must be in the negative. Our statute, 84 O.S.1951 § 54, provides that an holographic will is one that is entirely written, dated and signed by the hand of the testator himself. Such statute presupposes a testamentary intent, since without such intent there is no testator and no will. It therefore follows that any person who makes an holographic will for the first time must have a testamentary intent, and in his own handwriting write, execute and date the instrument before it complies with the statute. If Flora Barton had a testamentary intent when she changed the instrument in question in 1940, then that was the first time she placed herself in a position to make a valid will, and it is at that time she must comply with the statute. This she did not do, however, since she did not execute the instrument at that time or at any time thereafter, and the instrument must therefore be denied probate.

Proponents' contention that a validly executed will remains in force and effect until revoked as required by law is undoubtedly a correct statement of law but has no application here. A converse statement that an instrument which is not a will does not become one until executed as required by law, would appear to be more appropriate.

We conclude that the trial court did not err in denying probate to the instrument in question.

Judgment affirmed.

WELCH, DAVISON, HALLEY, BLACKBIRD and JACKSON, JJ., concur.

CORN, J., dissents.